(No. 67317.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JOHN ARMAN, Appellee.

*Opinion filed September 27, 1989.*

116

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Inge Fryklund and Maureen A. Harton, As-

sistant State's Attorneys, of counsel), for the People.

Julius Lucius Echeles, of Chicago, for appellee.

JUSTICE MILLER delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, the defendant, John Arman, was convicted of narcotics racketeering and was sentenced to 10 years' imprisonment. The appellate court reversed the defendant's conviction and remanded the cause for a new trial. (171 Ill. App. 3d 232.) We allowed the State's petition for leave to appeal (107 Ill. 2d R. 315(a)), and we now reverse the judgment of the appellate court and affirm the judgment of the circuit court.

The defendant was charged by indictment with the offense of narcotics racketeering, in violation of section 4(a) of the Narcotics Profit Forfeiture Act (Ill. Rev. Stat. 1983, ch. 56½, par. 1654(a)). The indictment alleged, in the language of the statute, that the defendant had "received income knowing such income to be derived, directly or indirectly, from a pattern of narcotics activity." The pattern of activity alleged in the indictment included six separate transactions occurring between March 19 and July 19, 1984.

The State's sole witness at trial was Detective Patrick Flynn of the Chicago police department. Detective Flynn testified that in March 1984 he learned from an informant of the operation of a drug ring in a certain neighborhood in Chicago. The informant gave the detective the telephone number of a paging service and the five-digit number of a particular pager. The informant instructed Flynn to call the paging service and to enter both the pager number and a telephone number where he could be reached. The informant explained to Flynn

that his call would be returned and that he could then make arrangements to purchase narcotics.

Flynn made his first transaction on March 19, 1984. On that day the detective called the telephone number the informant had given him and entered the five-digit pager number and the number of the pay phone he was using. Less than a minute later, Flynn received a call at the pay phone from a person identifying himself as Chino, who asked the detective "how much did [he] need." Flynn said that he wanted to buy two grams of cocaine. Chino told Flynn that the cocaine would cost $200 and that he could pick it up in the vicinity of a specified intersection. Flynn went to the designated area and called the pager number back, as he had been instructed to do. Flynn's call was returned by a person who again identified himself as Chino. Flynn was told that the cocaine would be delivered to him by Felix, who would be driving a silver Oldsmobile Cutlass. Flynn walked a short distance and was met by a silver Cutlass. The vehicle stopped, and a Latin male got out and approached Flynn. After identifying himself as Felix, the man asked Flynn if he was looking for Chino's package. Flynn responded that he was. Felix then handed Flynn a plastic bag containing two tinfoil packets. Flynn opened one of the packets and found that it contained a white powder, which later tests established to be cocaine. Flynn kept the two packets and gave Felix $200.

Following that transaction, Detective Flynn initiated an investigation of the drug ring. He learned that the telephone number he had called was registered to the Radio Relay Corporation, and that Radio Relay had leased the five-digit pager number to a business called Spaulding Auto Parts. According to Radio Relay's records, the contract for the pager had been signed on Spaulding's behalf by a person named John Arman.

Detective Flynn testified that he then contacted the State Drug Enforcement Administration and the Chicago police department identification section to determine whether a person by the name of John Arman had an arrest record. The detective explained that as a result of his inquiry he obtained a photograph of an individual named John Arman. At trial, the prosecutor showed the photograph to Flynn and asked the witness to identify it. Flynn responded that the photograph was a "Chicago Police Department identification—." Interrupting the witness, defense counsel objected to the testimony and moved for a mistrial. The trial judge sustained the objection but declined to grant the request for a mistrial.

Detective Flynn testified that on April 6, 1984, he called the pager again. His phone call was immediately returned by the same individual who had previously identified himself as Chino. Flynn agreed to buy two grams of cocaine for $200; Chino told Flynn that the cocaine would be delivered by Felix. Detective Flynn met Felix and consummated the deal.

On April 13, 1984, Detective Flynn called the pager telephone number to arrange another purchase. The man who returned the call first identified himself as Chino but then said that Flynn could call him Johnny rather than Chino. On this occasion Flynn agreed to buy an eighth of an ounce of cocaine for $325, and the narcotics were delivered to Flynn by a person named Frog. Later that month, on April 26, Flynn and Johnny arranged another transaction, with Flynn agreeing to buy a quarter ounce of cocaine for $575. Felix delivered the cocaine, as he had done previously. A fifth transaction between Flynn and Johnny was negotiated on May 3, 1984, and it involved the purchase of one ounce of cocaine for $2,000. Felix once again made the delivery.

Flynn called the pager on May 16, 1984, and Johnny returned the call. Flynn asked how much cocaine he

could obtain for $2,200 and was told that he could buy one ounce and an additional three to four grams. Flynn agreed to make the purchase but told Johnny that he needed the cocaine immediately; at trial, the detective explained that he was hoping that Johnny would make the delivery himself so that the police could positively identify him. Johnny told Flynn that he would bring the drugs over at once. Johnny failed to appear, however, and the delivery was made instead by an unknown Latin male, who approached Flynn and asked him whether he was waiting for Johnny's cocaine. That person identified himself as Julio.

On June 11, 1984, Flynn obtained authorization from the circuit court to record all telephone conversations directed to the pager number. Between June 11 and June 20, Flynn engaged in numerous conversations with Johnny; each conversation was tape recorded, and tapes of the conversations were introduced into evidence at trial and played for the jury.

On June 20, 1984, Flynn contacted Johnny through the pager and arranged to meet him at a fast food restaurant to purchase $15,000 worth of cocaine. Flynn arrived at the restaurant less than an hour later. As Flynn walked toward the entrance, he heard someone whistle. Flynn turned and saw a person whom he recognized as the man depicted in the police photograph of John Arman, and whom he identified at trial as the defendant. Flynn also recognized the defendant's voice as that of the person named Johnny with whom he had spoken on the telephone. Flynn estimated that during his investigation of the drug ring he talked with the defendant, known to him first as Chino and later as Johnny, at least 30 times.

Flynn asked the defendant whether he was Johnny, and the defendant replied, "Yeah, man, I'm Johnny. Let's talk." Flynn and Johnny discussed the transaction

but could not reach an agreement. While Flynn talked with Johnny, a surveillance crew took photographs, which were introduced into evidence at trial. About 30 minutes after Flynn left the restaurant, he contacted Johnny by means of the pager. During the conversation, which was recorded, Johnny referred to his meeting with Flynn at the restaurant, as well as to past drug transactions the two men had completed. The tape of the conversation was played for the jury at trial.

Before the close of the State's case in chief, the parties stipulated that the credit manager of the company operating the paging service would testify that a person named John Arman leased a pager from the company on November 22, 1983. The parties also stipulated to the testimony of the police department chemists who had assayed the cocaine purchased by Detective Flynn in the course of the investigation.

The defendant did not present any evidence at trial. During closing argument, the prosecutor referred three times to the failure of the defense to account for the defendant's presence at the fast food restaurant at the time of his meeting with Detective Flynn. Defense counsel objected to all three of the comments; the trial judge overruled the first objection but sustained the second and third objections. Following deliberations, the jury returned a verdict finding the defendant guilty of the offense charged, narcotics racketeering. Judgment was entered on the verdict, and the trial judge subsequently sentenced the defendant to 10 years' imprisonment.

The appellate court rejected the defendant's challenges to the sufficiency of the evidence of his involvement in the drug transactions; the court agreed with the defendant, however, that a new trial was necessary because of trial error. (171 Ill. App. 3d 232.) The appellate court found that the State had erroneously introduced evidence suggesting that the defendant had a prior ar-

rest record, and that the prosecutor had improperly commented on the defendant's failure to testify in the instant proceedings. The appellate court concluded that the cumulative effect of the two errors denied the defendant a fair trial. One member of the appellate panel dissented from that portion of the court's opinion. We allowed the State's petition for leave to appeal from the appellate court's judgment. 107 Ill. 2d R. 315(a).

Before this court, the State contends that Illinois law permits the introduction of "mug shot evidence" and related testimony to prove the identification of a defendant when identification is a material issue at trial. According to the State, because Detective Flynn's reference to the "Chicago Police Department identification—" photograph came into evidence as testimony relating to the identification of the defendant, there was no error. Alternatively, the State argues that any error was harmless in light of the overwhelming evidence of the defendant's guilt.

There is no dispute that when identification is a material issue at trial, testimony relating the use of mug shots in an investigation may be introduced to show how a defendant was initially linked to the commission of an offense. (*People v. Maffioli* (1950), 406 Ill. 315, 322.) The admissibility of such evidence is not without limits, however. Mug shot evidence tending to inform the jury of a defendant's commission of other, unrelated criminal acts should not be admitted. (*People v. Warmack* (1980), 83 Ill. 2d 112, 128; *Maffioli*, 406 Ill. at 322; see generally Annot., 30 A.L.R.3d 908 (1970).) In this case, Detective Flynn's reference to the photograph's having come from the Chicago police department's identification files informed the jury that the person depicted had been previously arrested, and the testimony was, therefore, evidence of other crimes that should not have been admitted.

The erroneous admission at trial of mug shot evidence suggesting the defendant's involvement in unrelated offenses does not automatically warrant reversal. (*People v. Lewis* (1984), 103 Ill. 2d 111, 118-19; *Warmack*, 83 Ill. 2d at 128-29.) When the competent evidence in the record establishes the defendant's guilt beyond a reasonable doubt and it can be concluded that retrial without the erroneous admission of the challenged evidence would produce no different result, the conviction may be affirmed. *Warmack*, 83 Ill. 2d at 128-29; *People v. Tranowski* (1960), 20 Ill. 2d 11, 17.

It must be noted that the trial judge sustained the defense objection to Detective Flynn's identification of the police photograph, and that later, at the close of evidence, the judge instructed the jury to disregard questions to which objections had been sustained. Moreover, the State presented overwhelming evidence of the defendant's guilt, through Detective Flynn's detailed testimony relating the course of the investigation, and through the detective's identification of the defendant as the person with whom he dealt on the telephone. It is our judgment that any error in the admission of evidence regarding the defendant's previous contacts with the Chicago police department was not prejudicial.

The State next disputes the appellate court's conclusion that the prosecutor improperly referred to the defendant's failure to testify at trial. The comments at issue were made during rebuttal argument. The prosecutor said:

> "These pictures, I submit to you convict this defendant beyond a reasonable doubt. I heard counsel say well, why don't the police do this, why don't they get this license plate, why didn't they follow him. Forget the fact they are working a major investigation with more than one target. You have been told that there were numerous phone calls made, there were other people involved in

this investigation, there were other targets of the investigation so a defense tactic is to knock the police procedure.

    I certainly didn't hear any explanation for what this defendant was doing at Wendy's.

    MR. GREEN [Defense counsel]: Objection, just for the record, Judge.

    THE COURT: Overruled.

    MR. SMITH [Prosecutor]: He talked about my investigation, he talked about my witness, he talked about the quality of the evidence. He never once gave you an explanation for what this defendant—

    MR. GREEN: Same objection, Judge.

    MR. SMITH: Was doing at Wendy's.

    THE COURT: Objection sustained.

    MR. GREEN: Ask the jury to disregard that comment.

    THE COURT: Jury disregard that comment."

Later, the prosecutor stated that the defendant's guilt was established by his meeting with Detective Flynn at the restaurant and his subsequent conversation with the detective about the meeting. The prosecutor then declared that there was "no other explanation for this defendant appearing there, other than—." The trial judge sustained defense counsel's objection to the comment and instructed the jury to disregard it.

The State contends that the appellate court failed to examine the prosecutor's rebuttal argument in the proper context. The State argues the comments at issue were intended to demonstrate the absence of any evidentiary basis for defense counsel's closing argument, and the State asserts that the comments, viewed in that context, were not erroneous.

An accused has a constitutional right not to testify as a witness in his own behalf (see *Griffin v. California* (1965), 380 U.S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229), and the prosecutor is forbidden to make direct or indi-

rect comment on the exercise of that right (*Griffin*, 380 U.S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229; *People v. Ramirez* (1983), 98 Ill. 2d 439, 450-51; *People v. Dixon* (1982), 91 Ill. 2d 346, 350; see also Ill. Rev. Stat. 1983, ch. 38, par. 155—1 (prohibiting comment on criminal defendant's failure to testify)). In determining whether improper comment has been made on a defendant's failure to take the witness stand and testify, a court will consider whether " 'the reference [was] intended or calculated to direct the attention of the jury to the defendant's neglect to avail himself of his legal right to testify.' " (*Dixon*, 91 Ill. 2d at 350, quoting *People v. Hopkins* (1972), 52 Ill. 2d 1, 6; see also *People v. Morgan* (1986), 112 Ill. 2d 111, 133-34.) In making that determination, a reviewing court should examine the challenged comments in the context of the entire proceeding. *United States v. Robinson* (1988), 485 U.S. 25, 32, 99 L. Ed. 2d 23, 31, 108 S. Ct. 864, 869; *Hopkins*, 52 Ill. 2d at 6.

From our review of the record, we conclude that the prosecutor's argument, which referred to the defendant's failure to explain his presence in the surveillance photographs, constituted an impermissible comment on the defendant's failure to testify.

In his summation at the conclusion of the trial, the prosecutor asserted that the testimony of Officer Flynn together with the photographs and tapes of conversations proved the defendant's guilt beyond a reasonable doubt. In response, defense counsel argued that the photographs showing the defendant at the restaurant did not establish that he was there to complete a narcotics transaction. In his rebuttal argument, the prosecutor noted, on three separate instances, that the defense had not provided an explanation of the defendant's presence in the surveillance photographs. A prosecutor may remark on the uncontradicted nature of the evidence of a

defendant's guilt. (See *People v. Lyles* (1985), 106 Ill. 2d 373, 390.) The prosecutor exceeded the bounds of such fair comment in this case, however, when he referred to the failure of the defense to provide any explanation for the defendant's presence at the restaurant.

It will be recalled that of the three comments challenged here, the trial judge sustained defense objections to the second and third and instructed the jury to disregard the remarks. A trial judge's prompt action in sustaining an objection to improper argument is generally sufficient to cure the error. (See *People v. Carlson* (1980), 79 Ill. 2d 564, 577.) But because the prosecutor in the present case made at least one improper comment to which a contemporaneous objection was overruled, we shall assume, for purposes of our review here, that the identical error was consummated in all three instances.

Although comment on a defendant's failure to testify is constitutional error, the defendant is not automatically entitled to a new trial. (See *Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824.) Despite the occurrence of constitutional error at trial, a defendant's conviction may be affirmed if the reviewing court concludes, upon the entire record, that the error was harmless beyond a reasonable doubt. *United States v. Hasting* (1983), 461 U.S. 499, 510-11, 76 L. Ed. 2d 96, 107, 103 S. Ct. 1974, 1981; *Chapman*, 386 U.S. at 24, 17 L. Ed. 2d at 710-11, 87 S. Ct. at 828.

As we have already indicated, the evidence of the defendant's guilt was overwhelming. The State presented evidence of a series of drug transactions between Officer Flynn and a man who identified himself first as "Chino" and later as "Johnny." During the course of the investigation, Flynn learned that the pager used in the transactions was leased by a person named John Arman. When Flynn met the defendant at the restaurant, the detective identified the defendant as Johnny on the basis

of the person's voice, having talked with Johnny over the telephone more than 30 times. Shortly after the meeting, Flynn contacted Johnny once more through the pager; during the conversation, the two men discussed their just-concluded meeting as well as the earlier drug transactions. Detective Flynn's testimony provided overwhelming proof of the defendant's guilt of the present offense, and we therefore believe that the prosecutor's error was harmless beyond a reasonable doubt. As we have noted, after overruling the defendant's objection to the first comment, the trial judge promptly sustained objections to the second and third comments and instructed the jury to disregard them. Finally, we must also reject the defendant's contention that the cumulative effect of the errors alleged in this case denied him a fair trial.

For the reasons stated, the judgment of the appellate court is reversed, and the judgment of the circuit court of Cook County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*