(No. 68875.—

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. WILLIE MULLEN, Appellee.

*Opinion filed December 20, 1990.*

396

MILLER, J., dissenting.

Neil F. Hartigan, Attorney General, of Springfield, and Cecil A. Partee, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Inge Fryklund, Renee G. Goldfarb, Theodore Fotios Burtzos and Adam D. Grosch, Assistant State's Attorneys, of counsel), for the People.

Michael J. Pelletier, Deputy Defender, and Anna Ahronheim, Assistant Defender, of the Office of the State Appellate Defender, of Chicago, for appellee.

CHIEF JUSTICE MORAN delivered the opinion of the court:

After a jury trial, Willie Mullen, defendant, was convicted in the circuit court of Cook County of the murder of Ernest Jones. The appellate court reversed and re-

manded the case to the circuit court for a new trial. (184 Ill. App. 3d 539.) This court granted the State's petition for leave to appeal (107 Ill. 2d R. 315(a)).

The sole issue on review is whether unobjected to prosecutorial comments in the State's rebuttal closing argument denied defendant a fair trial.

On August 19, 1985, at approximately 12:30 a.m., Ernest Jones was fatally shot on the west side of Chicago. Defendant, James Crockett and Manuel Rios were each charged with the murder. Crockett plead guilty and was sentenced to 22 years in prison. Defendant and Rios were simultaneously tried before separate juries.

At trial, three witnesses, Cortez Lee (age 15), Tyrone Carr (age 14), and Michael Howard (age 15), testified for the State. Lee testified as follows: that on the night of August 18, 1985 he went dancing at a skating rink with Carr and Howard; that the three left the skating rink for home at midnight and while walking home, they stopped outside a tavern at Ohio and St. Louis Streets, where he saw Rios and a man named Willie Ford, whom he knew from "around the neighborhood"; that he heard a gunshot, at which time he turned and looked to a gangway from where the sound of the shot came and saw Rios and Ernest Jones, at first walking and then running away from Rios; after the first shot, Jones continued to run and Lee saw Rios fire two other shots, at which time he saw Jones fall to the ground; that he then left the scene of the crime and ran to Carr's house.

Tyrone Carr testified next. He corroborated Lee's testimony as to having gone to the skating rink and then stopping outside the tavern. However, when he was asked who was outside the tavern he refused to answer. At that point, both defendant's and Rios' juries were excused. The trial judge asked Carr why he did not want to answer any further questions and he responded that his reasons were not because he was afraid, or because

he felt that he would incriminate himself. The court then appointed a public defender as *amicus* counsel for Carr. In an in-chambers conference, Carr told the judge that he did not want to get involved in the case because he was afraid of some boys "around the house." The court then continued the case until the next day.

The next day, Carr agreed to testify. Before bringing the juries back and allowing Carr's continued testimony, the court admonished the attorneys not to ask Carr any questions, or make any references, as to why he was initially reluctant to testify. The prosecutor vigorously objected to the court's admonition and the court stated that it would grant defense motion for a mistrial if the prosecutor referred to the Carr's hesitation in testifying. The prosecutor indicated that he understood the trial judge's position on this point, and the trial judge stated, "I don't want it [Carr's reluctance to testify] brought up at all."

When Carr continued his testimony, he testified as follows: that he saw Ernest Jones walking at Ohio and St. Louis Streets, and Rios was behind him, crouching down; that he saw Rios say something to Jones, that Jones stopped walking and replied, and then Jones turned and walked away from Rios; that he then heard a gunshot at which time Jones began to run; that after he heard another gunshot, he saw Rios and Ford run and get into a blue Chevy which took off; that he knew Rios from "around the neighborhood," and that the car Rios and Ford were in belonged to the defendant, but he did not see defendant drive it on the day of the shooting. On direct examination, Carr admitted that he originally lied to police about the incident because he was scared to get involved, but that he later told the police the truth and was telling the truth at the trial.

Michael Howard testified as follows: that he and Carr went to the roller skating rink, where they met Lee;

that later, while walking home, he saw Rios in an alley on the other side of the street, near Ohio and St. Louis Streets; that he also saw defendant's blue Chevy in the alley; that he heard a gunshot, he looked back, and saw Rios with a gun in his hand and a body next to him; that he then saw Rios pass the gun to the defendant, saw a flash and heard two gunshots; and that he saw defendant and Rios drive off in a blue Chevy, with defendant driving.

On cross-examination, Howard testified concerning the events surrounding the murder, as follows: that it was dark, he was not standing under a light, and that he was afraid when he heard the shots; that he did not tell the police that he saw Rios pass the gun to defendant; that he saw Willie Ford standing in front of the tavern, but that he did not see Ford get into the car; and that he did not see who was shot.

Detective Terence Thedford testified that defendant, accompanied by his mother, surrendered himself to the police. He then testified that defendant told him: that he had lied to the police in a previous interview because he feared gang retaliation, but that Rios was the one who shot Jones; that on the morning of August 19, he was standing on the corner of St. Louis and Ohio Streets in front of a tavern, with Crockett, Rios and Ford (who were all fellow members of the same street gang) and that across the street the group saw Jones (a member of a rival street gang) talking to some girls; that he, and his fellow gang members, began teasing Ford, because he had a previous altercation with Jones, in which he did not retaliate; that someone asked Ford if he wanted to shoot Jones and Ford stated that he would, if he had a gun; that Crockett then produced a handgun, and gave it to Ford who went over and talked to Jones, but returned, saying that there were too many people around

Jones, so he could not shoot him; and that Rios then volunteered to shoot Jones, and Ford gave him the gun.

Thedford also testified that defendant told him: that Jones had started to walk away, so Rios told him to go and stop Jones by asking him for a cigarette; that he then went over and asked Jones for a cigarette while Rios hid behind some bushes near an alley behind the tavern; that as Jones walked past the bushes, Rios jumped out and fired; that Jones ran but Rios fired again, and then he went down; that the group then ran away, met and returned the gun to Crockett, who was to get rid of it.

Dr. Yuskel Konacki, an assistant medical examiner, testified that he performed an autopsy on the body of Jones on August 19, 1985, and that the autopsy revealed that Jones had been hit by only one shot in the back, and that he died as a result of the one gunshot.

In closing argument, the assistant State's Attorney argued that defendant should be found guilty of murder on an accountability theory because the bullet which killed Jones had been fired by Manuel Rios. Furthermore, in his rebuttal argument, a second prosecutor made the following statement that is the subject of this appeal:

> "Do we want a civilized society, a civilized city, an orderly one, a law-abiding one, to be governed and dictated by the laws of the court, or do we want the laws of Willie Mullen and Manuel Rios to run the streets?
>
> Because, when you consider your verdict, a guilty or not guilty is a message; it is a message, not only to Manuel Rios and Willie Mullen, what they can do in a bad part of the city where kids who are scared and frightened are going to have to come into court and testify.
>
> And, when you consider that, remember perhaps one of the most powerful things in this case was when Tyrone Carr got up on the stand the first time, and he said he did not want to answer.

And use your common sense why he did not want to answer. The same reason no one wanted to talk, at first; they do not want to get involved.

Why don't they want to get involved? They do not want one of these ... in their back. Is this going to be what runs the streets of the City of Chicago."

Following deliberations, the jury found defendant guilty of Jones' murder. The circuit court denied all of his post-trial motions and subsequently sentenced defendant to 24 years in prison. Defendant then appealed his conviction to the appellate court. The appellate court reversed defendant's conviction, and remanded his case for a new trial. (184 Ill. App. 3d 539.) The appellate court found: (1) that the prosecutor's rebuttal comment, that witnesses were reluctant to testify because of fear of being shot in the back by defendant, was so prejudicial and inflammatory as to require reversal; and (2) that based on the numerous discrepancies between defendant's confession and the three eyewitnesses' testimony the jury could reasonably conclude that defendant did not participate in the murder, and thus the comments were not harmless beyond a reasonable doubt and constituted reversible error, requiring a new trial.

On appeal to this court, the State first argues that defendant has waived the issue of prosecutorial misconduct because defendant failed to properly preserve the error for review. Ordinarily, a defendant must object to an error at trial and include the objection in a post-trial motion in order to preserve it for review on appeal. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186.) In this case, the defendant did not object to the comments at the trial or in his post-trial motion. However, the plain error rule may be invoked in criminal cases when a defendant has not properly preserved an error for review, where the evidence is closely balanced, or where

the error adversely affected the defendant's right to a fair trial. (*People v. Carlson* (1980), 79 Ill. 2d 564, 576-77.) The main purpose of the plain error rule, if the evidence is closely balanced, is to protect against the "possibility that an innocent person may have been convicted due to some error which is obvious from the record, but not properly preserved" for appellate review. (*Carlson*, 79 Ill. 2d at 576.) In cases where the evidence is closely balanced, the probability that a defendant's conviction was caused by even a minor trial error is greatly enhanced. Therefore, in those cases, the court will invoke the plain error rule so that it can determine whether an error, which was not objected to at trial and in post-trial motions, raises doubt as to the validity of the jury's verdict. *Carlson*, 79 Ill. 2d at 576.

In this case, not one of the three eyewitnesses testified that anyone acted as a set-up man for the gunman, Manuel Rios. In fact, two of the three witnesses did not even see the defendant at the crime scene. Michael Howard was the only witness who did place defendant at the scene, and he stated that he saw Rios pass the gun to defendant and that defendant then fired two gunshots. This testimony, however, was impeached when Detective Thedford testified that Howard never told him that Rios passed the gun to defendant. It is also very difficult to believe that defendant would have missed hitting Ernest Jones if he was shooting at him from directly over his body. Furthermore, medical evidence showed that Jones was shot only once (in the back), and the State in closing argument, stated that it was uncontested that Rios was the one who inflicted the fatal wound. Finally, Lee's and Carr's testimony that Rios fired all three shots also contradicted Howard's version that defendant fired two shots.

The only other evidence that places defendant at the crime scene are his own statements to the police. There

are numerous discrepancies between defendant's confession and the testimony of the eyewitnesses, such as: (1) the fact defendant claimed to have been a set-up man for Rios and, as noted above, not one of the witnesses testified to seeing defendant act in that manner; (2) that each of the witnesses claimed that Rios and the others made their escape in a blue Chevy, whereas defendant stated that he, Rios and the others all escaped on foot; and (3) that he told Detective Thedford that Rios shot Jones in the head whereas all other evidence indicated that Jones was shot in the back.

The State essentially has argued that the fact that the defendant confessed to the crime, itself, constitutes enough evidence to sustain a conviction in a plain error case. However, a confession is only one item of evidence, and part of the role of a trier of fact is to determine how much credibility to give to each item of evidence. Thus, a confession standing alone, in light of other conflicting evidence, may not be enough to sustain a murder conviction, when a fundamental error occurred at trial. It is for the trier of fact to determine questions of credibility and weight, especially where the evidence is conflicting. (*People v. Schultz* (1981), 99 Ill. App. 3d 762, 770.) "The trier of fact may accept all, part or none of a defendant's confession [citation], and discrepancies between a confession and the physical evidence are for the trier of fact to assess." (*Schultz*, 99 Ill. App. 3d at 770.) One can hypothesize a number of reasons why a defendant may falsely confess to a crime. It is possible that defendant lied because "untrue confessions may be given to gain publicity, to shield another, to avoid apparent peril, or for other reasons." (*People v. O'Neil* (1960), 18 Ill. 2d 461, 464.) In this case, defendant's confession indicated that he, himself, was fearful of gang retaliation. The jury is entitled to give little or no weight to a confession, and can, instead, accept the accounts of other witnesses.

Thus, the prosecutor's improper argument may have been the deciding factor in the jury's verdict.

Even if the evidence in this case was not closely balanced, the prosecutor's comments in his rebuttal argument constitute plain error under the second prong of the plain error rule. Under this prong, a court will review trial errors that are "of such magnitude that the commission thereof denies the accused a fair and impartial trial." *Carlson*, 79 Ill. 2d at 576-77.

In this case, the prosecutor commented on evidence that the trial judge specifically excluded. At trial, Tyrone Carr initially refused to testify. In chambers, he had indicated that he was reluctant to testify because he was afraid of "the boys around the house," and what they might do to him or his family if he were to testify. Eventually Carr agreed to testify, but before he did, the trial judge specifically admonished the attorneys not to make any references as to his reasons for his initial refusal. The prosecutor strenuously argued as to the relevancy of Carr's fear of testifying, but the trial court stated that it would grant a motion for a mistrial if any reference to Carr's reasons for his initial refusal to testify was made by the prosecutor.

The State argues that although the trial judge did exclude this evidence for purposes of direct and cross-examination, the exclusion did not extend to closing arguments, and thus the prosecutor properly made reference to Carr's fear of testifying during his rebuttal. This argument is specious. Comment on evidence during closing argument is proper "if it is either proved by direct evidence or is a fair and reasonable inference from the facts and circumstances proved." (Vess, *Walking A Tightrope: A Survey of Limitations On The Prosecutor's Closing Argument*, 64 J. Crim. L. & Criminology 22, 27 (1973).) It follows that it is improper to refer to evidence which has been excluded. See *United States ex rel. Shaw*

*v. De Robertis* (7th Cir. 1985), 755 F.2d 1279, 1281 (prosecutor who invited jury to speculate as to inadmissible evidence must have known that such argument is grossly improper and wholly avoidable).

While prosecutorial comments on excluded evidence alone may not deny a defendant a fair trial, here the improper comment included the suggestion that witnesses were reluctant to testify because they were afraid that the defendant would shoot them in the back if they did so. As earlier noted, in finishing his rebuttal, the prosecutor stated (in pertinent part):

> *"And, when you consider that, remember perhaps one of the most powerful things in this case was when Tyrone Carr got up on the stand the first time, and he said he did not want to answer.*
>
> *And use your common sense why he did not want to answer. The same reason that no one wanted to talk, at first; they do not want to get involved.*
>
> *Why don't they want to get involved? They do not want one of these (indicating) in their back. Is this going to be what runs the streets of the City of Chicago?"* (Emphasis added.)

This statement clearly suggests that defendant threatened or intimidated witnesses so they would not testify against him. "Prosecutorial comments which suggest that witnesses were afraid to testify because defendant had threatened or intimidated them, when not based upon any evidence in the record *** are highly prejudicial and inflammatory." (*People v. Ray* (1984), 126 Ill. App. 3d 656, 662; see also *People v. Brown* (1983), 113 Ill. App. 3d 625, 630.) In the case at bar, there existed no evidence in the record that defendant in any way threatened or intimidated any witness.

The State argues that it has the right to comment on a witness' fear of involvement in a criminal case, based on the court's decisions in *People v. Hynes* (1962), 26 Ill.

2d 472, and *People v. Thompkins* (1988), 121 Ill. 2d 401. The State's reliance on these cases is misguided as both cases are distinguishable from the instant case on their facts. In both *Hynes* and *Thompkins*, the court found that the prosecutors' comments regarding witnesses' fears of testifying were proper because the comments were based on evidence derived from testimony *in the record*. (See *Hynes*, 26 Ill. 2d at 476; *Thompkins*, 121 Ill. 2d at 445.) The State's argument that Carr interrupted his testimony because he feared a bullet in the back was not based on any evidence in the record. The State did not introduce any evidence that Carr was afraid to testify, or afraid of a bullet in the back, or that defendant had threatened Carr, or that Carr was afraid of him.

The State raises as a further argument that the complained-of comment was invited by the defendant, and thus was not improper rebuttal. (See, *e.g., People v. Dixon* (1982), 91 Ill. 2d 346, 350-51.) The State's basis for this argument is a reference by defense counsel in her closing argument that "the State wants you to believe those three young men, scared, not scared, or whatever their problem is, were telling you the truth, and they came in here and told you what happened." The State suggests that it properly addressed why the witnesses were scared. This argument is without merit. Defense counsel, in making this statement, was merely using the same descriptive term to refer to these witnesses as the prosecutor had done in his closing argument. The prosecutor, had characterized these witnesses as *"three scared young boys who testified as to what they saw that night on the street"* (emphasis added). The State cannot now use this defense counsel comment to justify invited error, when it initiated the reference.

Even if this court were to allow the invited error argument, the prosecutor's rebuttal comment was not responsive to defense counsel's comment. A reading of the

entire record indicates that evidence existed that the witnesses were scared only at the time of the shooting and shortly thereafter. There is no evidence that any witness was afraid at the time of trial (the time frame mentioned in the prosecutor's rebuttal argument). As such, the prosecutor commented on the wrong time frame. In any event, even if the witnesses were scared at trial, no evidence exists that the defendant contributed to these fears. In fact, when he made his statement to Detective Thedford, defendant himself stated that he was fearful of gang retaliation.

Having concluded that the prosecutor's rebuttal comments constitute plain error, the question remains as to whether the defendant's conviction should be reversed. If the prosecutor's remarks were such that, had they not been made the jury may have reached a different result, then the error is prejudicial. (*People v. Baptist* (1979), 76 Ill. 2d 19, 28-30.) Furthermore, "[e]ach case of this kind must be decided upon its own facts." *People v. Weathers* (1975), 62 Ill. 2d 114, 120.

The State argues that even if the prosecutor's statement is considered to be error, it is clearly harmless, because the evidence against defendant was overwhelming. We cannot agree. As discussed above, the evidence in this case is closely balanced and littered with discrepancies. In fact, the emphasis which the prosecutor placed on the excluded evidence in his rebuttal argument indicates his high appraisal of the excluded evidence's importance to the jury's determination of defendant's guilt. The prosecutor determined that *"perhaps one of the most powerful things in this case was when Tyrone Carr got up on the stand the first time, and he said he did not want to answer"* (emphasis added). The prosecutor then improperly suggested that defendant threatened Carr. Such a blatant disregard as to proper argument and the orders of the trial court is egregious. It is proba-

ble that the prosecutor's comment had an influence on the jury and may be the reason the jury returned a guilty verdict. (See *Garris v. United States* (D.C. App. 1968), 390 F.2d 862 (prosecutor's own estimate of his case, and its reception by the jury, is, if not the only, at least a highly relevant measure, on review, of the likelihood of prejudice from improper argument).) The trial judge recognized this prejudicial impact when he originally excluded any reference as to why Carr originally refused to testify. (See 75 Am. Jur. 2d *Trial* §251 (comment by counsel on evidence excluded by trial court is universally considered prejudicial).) Finally, as noted above, prosecutorial intimation that a defendant threatened or intimidated witnesses are highly prejudicial. (See *People v. Gambony* (1948), 402 Ill. 74, 80 (evidence of any attempt to intimidate a witness is indicative of a consciousness of guilt and is therefore highly relevant).) Because the error in this case was substantially prejudicial, defendant was denied a fair trial. Therefore, this court affirms the decision of the appellate court reversing defendant's conviction and remanding the cause to the circuit court for a new trial.

*Appellate court affirmed.*

JUSTICE MILLER, dissenting:

I do not agree with the majority's conclusion that the prosecutor's comment constituted plain error. Rather than grant the defendant a new trial, I would instead remand the cause to the appellate court for the resolution of additional issues raised there by the defendant but not decided by that court in the course of the original appeal.

As the majority opinion acknowledges, defense counsel did not object to the prosecutor's remark, nor did counsel raise the matter in the defendant's post-trial motion. Ordinarily, then, the issue would be deemed waived

by reason of counsel's procedural defaults. (*People v. Whitehead* (1987), 116 Ill. 2d 425, 446-47.) But like the appellate court before it, the majority in the present case believes that the prosecutor's comment constituted plain error. (See 107 Ill. 2d R. 615(a) (on review of a criminal case, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court").) Because courts apply the plain error doctrine to redress "serious injustices which have been done to the defendant" (*People v. Carlson* (1980), 79 Ill. 2d 564, 576), one may question the majority's suggestion (141 Ill. 2d at 407) that plain error may also be harmless error. See *United States v. Young* (1985), 470 U.S. 1, 16 n.14, 84 L. Ed. 2d 1, 13 n.14, 105 S. Ct. 1038, 1047 n.14.

This court has previously invoked the plain error rule when an error affecting a substantial right might have altered the outcome of a factually close case or, alternatively, operated to deny the defendant a fair trial. (*People v. Stewart* (1984), 104 Ill. 2d 463, 488; *People v. Sanders* (1983), 99 Ill. 2d 262, 273.) In the present appeal, the court holds that both grounds for application of the plain error rule exist. Assuming that the prosecutor's comment was erroneous, I do not agree with the majority that the plain error rule is applicable here.

Contrary to the majority's view, the proof in this case was not closely balanced. At trial, the prosecution introduced into evidence the defendant's confession, which detailed his participation in the victim's murder. The confession was sufficient to sustain the defendant's conviction for that offense on an accountability theory. As the State observes, "a voluntary confession by a competent person is the highest type of evidence known to the law" (*People v. Smith* (1963), 27 Ill. 2d 344, 349). I do not consider that the force of the defendant's admissions

was seriously undermined by certain discrepancies appearing in other evidence introduced by the prosecution.

Nor do I believe that the nature of the alleged error was so egregious that it operated to deny the defendant a fair trial. "Any error related to *** comments to which no objections were made would normally be considered waived unless the comments were so inflammatory that defendant could not have received a fair trial or so flagrant as to threaten deterioration of the judicial process." (*People v. Albanese* (1984), 104 Ill. 2d 504, 518.) The comment challenged here was a fleeting reference, and it came at the end of a three-day trial. Moreover, the prosecutor's argument told the jurors little that they would not already have surmised from the witness' behavior in the courtroom. Defense counsel may well have believed that a contemporaneous objection would have only highlighted the arguably improper comment.

The defendant's failure to object to the comment now complained of denied the trial judge the opportunity to assess the impact of the alleged error and devise an appropriate remedy for it. Had defense counsel objected to the prosecutor's rebuttal argument, the trial judge could have considered whether the remark in question violated his earlier directive to the parties not to comment on the witness' reluctance to testify, or whether instead the remark was based on competent evidence or was invited by defense counsel's own closing argument, as the State contends. If the trial judge concluded that the comment was improper, he would then have decided whether simply to sustain the defense objection, to strike the comment and instruct the jury to disregard it, or to declare a mistrial. In determining the probable effect of the comment on the jury, and in devising an appropriate remedy for the asserted error, the judge would have considered a number of circumstances, including the strength of the parties' evidence and the context in which the remark

was made. Those questions raise factual issues and in many cases are more easily, and more accurately, resolved in the trial court than on review. In attempting to correct what the majority perceives to be a substantial injustice, today's decision only erodes the traditional division of duties between the trial courts and courts of review.

Finally, we should not find in our resolution of the present appeal a vehicle by which to discipline the prosecutor for his alleged violation of the trial judge's directive. That the prosecutor's conduct was "egregious" and in "blatant disregard" of the court's order, as the majority says (141 Ill. 2d at 407), is simply irrelevant to the question whether the alleged error was also harmless. (See *United States v. Hasting* (1983), 461 U.S. 499, 76 L. Ed. 2d 96, 103 S. Ct. 1974.) The trial judge had the authority to impose an appropriate sanction on the prosecutor, if the judge believed one was necessary; we should not exact from society the time and expense of a new trial, if the error was indeed harmless.

In sum, I do not believe that the evidence was so closely balanced that the unobjected-to comment could have affected the outcome of the proceeding, nor do I consider that the comment denied the defendant a fair trial. Accordingly, I do not regard this case as an appropriate one in which to apply the plain error rule. In light of its result in the present matter, the appellate court did not consider certain other issues raised by the defendant on appeal to that court. The parties have not briefed those questions before this court, and therefore I would remand the cause to the appellate court for consideration of those remaining issues.