11/27/96
Fifth Division


THE PEOPLE OF THE STATE OF ILLINOIS, ) APPEAL FROM
 ) THE CIRCUIT COURT
 Plaintiff-Appellee, ) COOK COUNTY.
 )
 v. ) No. 91 CR 23263
 ) 
GORDON SIMS, ) THE HONORABLE
 ) WILLIAM J. HIBBLER,
 Defendant-Appellant. ) JUDGE PRESIDING. 


 JUSTICE COUSINS delivered the opinion of the court: 
 Defendant, Gordon Sims, was convicted of first degree murder
after a jury trial and was sentenced to 40 years' imprisonment. 
On appeal, Sims argues that: (1) the State, during closing
argument, erroneously implied that a State witness had changed his
testimony at trial because he was afraid of the defendant; (2) the
jury was improperly allowed to view a mug shot of defendant which
showed that he had been previously arrested for another crime; (3)
the trial court erroneously admitted inadmissible hearsay evidence
that improperly bolstered the credibility of a crucial State
witness; (4) the trial court 
erred by allowing the State to impeach its own witness with a
prior inconsistent statement even though the witness' testimony at
trial did not damage the State's case, and the trial court then
erroneously instructed the jurors to consider this prior
inconsistent statement as substantive evidence, although the court
had earlier ruled this evidence admissible for impeachment
purposes only; and (5) the State improperly introduced prejudicial
evidence about the victim's family and made inflammatory remarks
about the family during closing argument.
BACKGROUND
 On August 30, 1990, the victim, Marvin Brown and his wife,
Faye Brown, went to the first floor of an abandoned building
located at 4651 West End to smoke cocaine. Three other
individuals named Bee, John, and Stuart were also with them. 
About an hour later, Marvin and John began to argue. Faye told
Marvin to buy John a couple of bags of cocaine. Marvin, John and
Bee went to get the cocaine. Faye stayed behind and looked out
the window. About 15 to 20 minutes later, Faye heard Marvin
outside arguing with defendant. At trial, Faye identified the
defendant, Gordon Sims, as the person she knew as G-Man. She
stated that she knew G-Man before, from when he was standing
around selling drugs. Marvin and defendant were arguing about a
beeper. Faye ran outside and got between Marvin and defendant,
who were standing face to face arguing. She stood there for about
five minutes. Marvin threw his hands up and asked defendant why
he was messing with him. At that time, Faye grabbed Marvin s arm
and started to push him toward the building. Defendant walked away
but then turned back around and shot Marvin. Then he got into a
car and drove away. 
 Officer Ramon Saragosa went to West End and Kilpatrick to
investigate the incident. When he arrived at the scene, he
observed a black male, whom he later identified as Marvin Brown,
lying on the ground with a bullet in his midsection and blood on
his shirt. Saragosa called for an ambulance and tried to seal off
the crime scene. At trial, Saragosa testified that, while at the
scene, he spoke with Marvin Davis. Pursuant to this conversation,
Saragosa transmitted a flash message in which he described the
suspect as a black male who went by the name of G-Man,
approximately 5 feet 10 inches tall, 170 pounds, with gray and
black hair and bulging eyes. The officer also transmitted that
the male offender was with two or three black males in a white
Pontiac 6000, four-door vehicle travelling westbound from West
End. 
 On August 31, 1990, Detective Patrick Foley became involved
in the investigation. He proceeded to the scene of the incident
with his partner, Detective Frank Gross. There, Foley spoke to
Marvin Davis. He then interviewed Davis at the police station. At
trial, Davis testified that on the night of August 30, and in the
early morning hours of August 31, he was with his aunt, Luvinia
Bonds. Earlier that evening, Faye Brown and Luvinia Bonds had
been in Bonds' apartment with him and they had all been smoking
cocaine. Davis testified that he was inside Bonds' first-floor
apartment and was looking out the window watching Faye Brown, G-
Man, and several other people. Davis stated that, he heard
Marvin Brown and G-Man arguing over a beeper. According to Davis,
G-Man turned and walked away from Marvin. Davis said that, at
that point, his attention was diverted to something that happened
in the apartment. Davis said that he heard a gunshot, went back
to the window, and saw Marvin fall to the ground. He then
observed G-Man walk away, get in his car, and leave. Davis also
testified that he did not see anything in defendant s hands. 
 At this point in the trial, a sidebar conference was held. 
The State indicated that Davis testimony about what he had
observed was inconsistent with his grand jury testimony. The
State wanted to introduce Davis prior grand jury statement as
substantive evidence. After a lengthy discussion, the trial judge
ruled that he would allow the State to question Davis with regard
to his grand jury testimony and introduce the evidence as
substantive evidence.
 The State then indicated that it wanted to introduce a prior
inconsistent statement that Davis had made to the detectives. The
judge permitted the State to lay a foundation for the admission
and cautioned the State that if Davis denied making a statement to
police, the statement would not be admissible as substantive
evidence.
 During another sidebar conference, the State also told the
court that it wanted to question Davis about a conversation
between him and defendant on the Friday before trial where
defendant allegedly told Davis Don t make a mistake as they
passed by each other in the "bullpen" at the Department of
Corrections where both men were being held. During a voir dire of
Davis, Davis indicated that he was not sure what defendant said to
him that Friday. Consequently, the court ruled that the evidence
was irrelevant and inadmissible because Davis could not recall
what defendant said to him, and because Davis indicated that the
conversation had no impact on him. 
 When questioning of Davis resumed, Davis testified that he
had been interviewed by Detectives Gross and Foley. He testified
that he did not recall telling the detectives that he saw G-Man
take a gun from his waistband and shoot Marvin Brown. Davis did
not remember telling the detectives that Marvin told G-Man he had
a beeper for him and that G-Man said it didn't matter since Marvin
did not have the beeper with him. Davis also testified that he
did not remember telling police that Marvin said G-Man did not
have to speak to him that way.
 Davis further testified that he had appeared before the grand
jury on September 24, 1991, and was questioned about the shooting
of Marvin Brown, but that he did not recall telling the grand jury
that he saw defendant shoot Marvin Brown. The State asked Davis
whether anyone other than Gordon Sims had a gun during the
incident. Davis answered that he did not see a weapon at all. The
State then read the grand jury transcript and asked Davis whether
he was asked, Did anyone else out there other than Gordon Sims
have a weapon? and whether he answered no to that question. 
Davis testified that he did not remember being asked that question
and that he did not see any weapon during the incident. On re-
cross-examination, Davis reiterated that he did not see defendant
shoot Marvin Brown.
 Detective George Tray testified that on August 31, 1990, he
reviewed the available reports in the case, proceeded to the
graphic arts and identification section at the station, and
secured photographs of Gordon Sims. He then went to the home of
Faye Brown and showed her a group of six photographs. Brown
identified a photograph of defendant as the person who shot Marvin
Brown. She then signed the back of the photograph in the presence
of the detectives. 
 On September 2, 1990, Detective Tracy went to 4651 West End
to canvass for witnesses. There he found Luvinia Bonds. He took
Bonds to the police station to view a group of photos. Bonds
viewed five photos and identified defendant as the person who shot
and killed Marvin Brown. After Bonds made the identification, she
signed the back of the photo. At trial, Bonds testified that, at
the time of the incident, she was living at Kilpatrick and West
End in an abandoned building. On August 30, 1990, she was in her
bedroom on the first floor. When she looked out the window, she
saw G-Man, Marvin Brown, and several other people. Bonds
testified that she heard defendant and Marvin Brown arguing, so
she stood on a bench and continued to look out the window. 
According to Bonds, G-man started to walk away, then turned around
and shot Marvin Brown. On cross-examination, Bonds admitted that
when she first spoke with police officers after the incident, she
initially told them that she never saw who shot Marvin Brown. She
testified that she made the statement to the police because she
had an outstanding warrant and did not want to remain at the
station.
 On September 5, 1991, defendant was released to the custody
of Detective Greg Bronsberg from the Jackson, Michigan, law
enforcement authorities. 
 During the jury instructions conference, defense counsel
objected to sending the mug shots that were used in the photo
identification by Faye Brown and Luvinia Bonds to the jury during
its deliberations. The pictures depicted defendant and four other
black males with name plates hanging from their necks. The court
ruled that the jurors had a right to see the photographs, but
decided the name plates would be blackened out by coloring over
the plates with a black marker. Prior to jury deliberations, the
court advised the jurors that the court had blackened out certain
portions of the photographs contained in the photo array exhibits. 
The court instructed the jurors that they were not to concern
themselves with the reasons for the blacked-out areas, and they
were not to attempt to determine what was blackened out during
their view of the items.
 The jury found defendant guilty of first degree murder. 
Defendant was sentenced to 40 years imprisonment in the Illinois
Department of Corrections. 
 We affirm.
OPINION
 I
 Defendant complains that the prosecutor's remarks during
closing argument implied that Marvin Davis changed his testimony
at trial because he was afraid of defendant and, therefore,
constituted reversible error. During rebuttal closing argument,
the State argued, over defense counsel's objections:
 "Marvin Davis said G-Man did it. And you heard the exact
 words when the court reporter (referring to Davis' testimony
 before the grand jury) came in here and testified. But what
 happened to Marvin Davis since then, why does this tell you
 that is the truth, Marvin Davis now can't hide. Marvin Davis
 now --. Marvin Davis now can't move away. Marvin Davis is in
 the Illinois Department of Corrections. And Marvin Davis said
 that Friday was the day he saw the defendant. And yesterday,
 Marvin Davis came in here and said, I can't remember saying
 in the Grand Jury that I saw G-Man shoot Marvin Brown. I
 can't remember anything, is what Marvin Davis said when asked
 about this man [defendant]. 
 ***
 But there were a couple of questions he couldn't remember. 
 Why do you think he can't remember those questions. Think
 maybe he's a little scared?" 
Defense counsel objected and moved for a mistrial. The court
overruled the objection. 
 Defendant argues that the prosecutor's comments were
prejudicial because they improperly suggested, without basis in
the record, that Marvin Davis was afraid to testify because he had
been threatened by the defendant. Conversely, the State responds
that the State's rebuttal closing argument was proper where it was
based on the evidence adduced at trial and explained why Marvin
Davis' trial testimony differed from what he told the police
immediately after the incident and from what he testified to
before the grand jury. Furthermore, the State argues that there
was no reference or allegation that Davis was scared or
intimidated specifically by the defendant, nor were the
prosecutor's statements highlighted, repeated or emphasized so as
to constitute a material factor in defendant's conviction, without
which the jury might have reached a different result. 
 Prosecutors are afforded wide latitude in closing argument,
and improper remarks will not merit reversal unless they result in
substantial prejudice to the defendant, considering the context of
the language used, its relationship to the evidence, and its
effect on the defendant's right to a fair and impartial trial. 
People v. Thompkins, 121 Ill. 2d 401, 445, 521 N.E.2d 38 (1988). 
Generally, prosecutorial comments which suggest that witnesses are
afraid to testify because defendant threatened or intimidated
them, when not based upon any evidence in the record, are highly
prejudicial and inflammatory. People v. Mullen, 141 Ill. 2d 394,
405, 566 N.E.2d 222 (1990), citing People v. Ray, 126 Ill. App. 3d
656, 467 N.E.2d 1078 (1984). In the case sub judice, however, the
prosecutor's comments did not result in substantial prejudice to
the defendant. Nor do we find that the prosector's remarks
constituted a material factor in the defendant's conviction.
 Defendant relies on People v. Mullen, 141 Ill. 2d 394, 566
N.E.2d 222 in which the supreme court held that a prosecutor s
references to an eyewitness' fear of testifying constituted plain
error. We believe that Mullen is distinguishable from the instant
case on its facts. In Mullen, the court found plain error where
the prosecutor suggested that witnesses were reluctant to testify
because they were afraid the defendant would shoot them. 141 Ill.
2d 394. At trial, a State s witness refused to answer questions
about a shooting incident to which he was an eyewitness. Mullen,
141 Ill. 2d at 397-98. Outside the presence of the jury, the
trial judge asked the witness why he did not want to answer any
further questions. In an in-chambers conference, the witness told
the judge that he did not want to get involved in the case because
he was afraid of some boys around the house. Mullen, 141 Ill.
2d at 398. The court then continued the case until the next day. 
The next day, the witness agreed to testify. Outside the presence
of the jury, the court admonished the attorneys not to ask the
witness any questions, or make any references, as to why he was
initially reluctant to testify. When the witness continued his
testimony, he testified about what he had seen at the shooting. 
Mullen, 141 Ill. 2d at 398. 
 During closing argument, the prosecutor argued that "one of
the most powerful things in this case was when [the witness] got
up on the stand and said he did not want to answer" because he did
not want a bullet in his back. Mullen, 141 Ill. 2d at 401. The
court found that the prosecutor s statements were prejudicial as
they suggested that defendant threatened or intimidated witnesses
so they would not testify against him. Furthermore, the court
found that the prosecutor s comments were improper where they were
not based on any evidence in the record. The court noted the
emphasis placed on the witness' reluctance to testify and
characterized the State's argument as "egregious," as well as a
"blatant disregard as to proper argument and the orders of the
trial court. Mullen, 141 Ill. 2d at 407.
 Although there are similarities between Mullen and the
instant case, we agree with the State that Mullen is inapposite.
Unlike Mullen, in the instant case, the comments conformed to the
evidence in the record. Furthermore, the prosecutor in the
instant case did not violate the trial court's order not to refer
to an excluded comment, "Don't make a mistake," that the defendant
was alleged to have made to Davis. Conversely, in Mullen, the
prosecutor specifically referred to the evidence that the trial
court excluded. The comments here were not egregious, differed in
degree from Mullen, and were not comparable to the highly
prejudicial comments in Mullen. Here, the complained-of remarks
were also comparatively brief. Assuming, arguendo, the comments
were improper, in our view plain error did not occur and the error
in argument in this case was harmless, as the evidence against the
defendant was not close.
 II
 Defendant next contends that he was denied a fair trial where
the trial judge allowed the jury to view a mug shot of the
defendant showing that defendant had been previously arrested for
another offense.
 The supreme court explained in People v. Arman, 131 Ill. 2d
115, 545 N.E.2d 658 (1989), that testimony relating to the use of
mug shots in an investigation may be introduced to show how a
defendant was initially linked to the commission of an offense
when identification is a material issue at trial. Arman, 131
Ill. 2d at 123; People v. Dunigan, 263 Ill. App. 3d 83, 625 N.E.2d
522 (1994). A police photograph is admissible to show the
reasonableness of a witness' identification that the offender and
the person depicted are the same. People v. Byrd, 43 Ill. App. 3d
735, 741, 357 N.E.2d 174 (1976). While mug shot evidence should
not be admitted if it tends to inform a jury of a defendant s
commission of other, unrelated criminal acts, the erroneous
admission at trial of mug shot evidence suggesting the defendant s
involvement in unrelated offenses does not automatically warrant
reversal. Arman, 131 Ill. 2d at 124.
 Defendant points out that the jury in this case knew that the
photo array was shown to Faye Brown and Luvinia Bonds before the
defendant was arrested for the present offense, and, thus, the
jury would have known upon seeing the mug shot of the defendant
that he had previously been arrested for another offense. 
Defendant's argument is similar to the argument presented and
rejected in People v. Warmack, 83 Ill. 2d 112, 413 N.E.2d 1254
(1980). 
 In Warmack, the defendant argued that the trial judge erred
in admitting defendant s mug shot bearing an arrest date prior to
that of the offenses at issue. Warmack, 83 Ill. 2d 112, 413
N.E.2d 1254. The court acknowledged the error in admitting such
specific evidence of the prior arrest. However, the court found
that to hold this error reversible would require a presumption
that the jury recognized the arrest date for what it was, realized
that the arrest date preceded the date of the offenses with which
defendant was charged, and then adjudicated defendant's guilt on
the basis of this prior evidence rather than the evidence produced
at trial. The court rejected this presumption. Warmack, 83 Ill.
2d 112. 
 In the instant case, the mug shot was material. A crucial
issue in this case was the identification of defendant. Luvinia
Bonds and Faye Brown both testified that they knew defendant as G-
Man. Both Bonds and Brown then identified G-Man from his mug shot
photo. The mug shot was then properly admitted into evidence,
where it was introduced for the purpose of showing how defendant
was identified. 
 Moreover, the mug shot was less indicative of prior arrests
than the mug shots in Warmack. Like the court in Warmack, we
decline to presume that the defendant's undated mug shot, rather
than the evidence presented at trial, provided the basis upon
which the jury adjudicated defendant's guilt. 
 Furthermore, we agree with the State that, even if defendant
was granted a new trial and the mug shot evidence was excluded,
the omission of the mug shot evidence would not be likely to
produce a different result in light of the eyewitness testimony
from Luvinia Bonds and Faye Brown. See Arman, 131 Ill. 2d at 124
(holding that when the competent evidence in the record
establishes the defendant s guilt beyond a reasonable doubt and it
can be concluded that retrial without the erroneous admission of
the challenged evidence would not produce a different result, the
conviction may be affirmed).
 III
 Defendant also argues that he was denied a fair trial where
the trial court erred in admitting inadmissible hearsay evidence
that improperly bolstered the credibility of a crucial state
witness. We disagree.
 Hearsay is testimony of an out-of-court statement offered to
show the truth of the matter asserted in the statement. People v.
Gaurige, 168 Ill. App. 3d 855, 864, 522 N.E.2d 1306 (1988). To
establish his course of conduct, a police officer may testify that
he had a conversation with an individual and that he subsequently
acted on the information received. People v. Johnson, 199 Ill.
App. 3d 577, 582, 557 N.E.2d 446 (1990). The officer cannot,
however, testify as to the substance of the conversation with the
individual because that would be inadmissible hearsay. Johnson,
199 Ill. App. 3d at 582. 
 At trial, police officer Ramon Saragosa testified that when
he arrived on the scene of the incident, he spoke with Davis.
Pursuant to this conversation, Saragosa indicated that he
transmitted a flash message over the radio. The State maintains
that the officer s testimony about the flash message was not
hearsay because it was not offered to prove the truth of the
matter asserted in the statement, but was offered to explain why
the police investigation was conducted in the manner that it was. 
We agree with the State. The inference logically to be drawn from
the officers flash message is that the information received
accounts for the officers subsequent conduct. People v. Gacho,
122 Ill. 2d 221, 248, 522 N.E.2d 1146, 1159 (1988), citing People
v. Hunter, 124 Ill. App. 3d 516, 529, 464 N.E.2d 659 (1984). 
However, the officer did not testify as to the content of his
conversation with Davis. Rather, Officer Saragosa testified that
a conversation took place and then testified as to what he said
regarding the offender's identity. What the officer said was not
hearsay as it was not admitted to assert the truth of the
information received or disseminated. People v. Hunter, 124 Ill.
App. 3d 516, 529, 464 N.E.2d 659 (1984). This testimony was
competent to establish investigatory procedure. See People v.
Gacho, 122 Ill. 2d 221, 522 N.E.2d 1146 (1988)(supreme court held
officer's testimony was properly admitted where police officer
testified to what he did and to investigatory procedure pursuant
to a conversation with a witness).
 Assuming, arguendo, that the testimony by the police officer
was improper, any prejudice was cured by the trial court's
limiting instruction. The trial court instructed the jury and
stated:
 The fact that he (Officer Saragosa) gave out information is
 not being offered for the truth of the matter asserted, not
 being offered for the truth of the information received or
 disseminated. It is only being offered to bring to your
 knowledge the course of the investigation. Whatever
 information he received or disseminated would be hearsay and
 is not being admitted for the truth of what was said but only
 to explain the course of the investigation. 
It can be presumed that the jury followed the court's instructions
and used the evidence for its limited purpose. Accordingly, we
hold that Officer Saragosa's testimony was properly admitted.
 IV
 Defendant next contends that he was denied a fair trial where
the trial court erred by allowing the State to impeach its own
witness with a prior inconsistent statement and then instructing
the jury to consider this statement as substantive evidence. 
 At trial, Marvin Davis took the stand as a witness for the
State. He testified that he did not see defendant shoot Marvin
Brown. The State then proceeded to impeach Davis with his prior
grand jury testimony and statement to police detectives where he
stated that he had seen defendant shoot Marvin Brown. 
 Supreme Court Rule 238(a)(134 Ill. 2d R. 238(a)) permits a
party to impeach its own witness with a prior inconsistent
statement. However, to do so, a party must show that the
witnesses testimony has damaged rather than failed to support the
position of the impeaching party. People v. Weaver, 92 Ill. 2d
545, 563, 442 N.E.2d 255 (1982). It is only when the witness 
testimony is more damaging than his complete failure to testify
would have been that impeachment is useful. Weaver, 92 Ill. 2d at
563-64. The effect of evidence admitted for impeachment is that
it tends to (1) discredit the witness (People v. Cruz, 162 Ill. 2d
314, 359, 643 N.E. 2d 636 (1994)), and (2) cancel the witness 
damaging testimony (Weaver, 92 Ill. 2d 545, 563). The prejudice
suffered when such evidence is improperly admitted is that it
places before the jury evidence that tends to support rather than
damage the State s case. See Weaver, 92 Ill. 2d 545, 563. 
Defendant relies on Weaver and contends there was reversible error
in admitting Davis' prior statement to the police detectives for
impeachment purposes when Davis' testimony at trial failed to
support the State's case but was not damaging to the State's case. 
Thus, the issue here is whether Davis testimony damaged, rather
than failed to support, the State s case. 
 Prior to trial, Davis stated that he saw defendant pull a gun
from his waistband and shoot Marvin Brown in the stomach. At
trial, however, Davis took the stand as a witness for the State,
but testified that he did not even see defendant with a gun and 
did not see defendant shoot Marvin Brown. The State then
questioned Davis about his grand jury testimony and his prior
statement to the police detectives. Davis' grand jury testimony
was properly adduced and admitted as substantive evidence pursuant
to section 115-10.1(c)(1) of the Code of Criminal Procedure (725
ILCS 5/115-10.1(c)(1) (West 1992)). In our view, however, Davis'
statement to the police detectives was not properly admitted as
impeachment under Supreme Court Rule 238(a) (134 Ill. 2d R.
238(a)) in that it merely failed to support rather than damage the
state s case. However, since Davis' grand jury testimony was
identical to the statement he made to the police detectives, the
use of Davis' statement to the police was cumulative and the error
was harmless. See People v. Chatmon, 236 Ill. App. 3d 913, 938,
604 N.E. 2d 399 (1992).
 Defendant also argues that the trial court then erroneously
allowed the jurors to consider both Davis testimony to the grand
jury and his statement to the police as substantive evidence. At
trial, the court read verbatim to the jury the jury instruction
contained in the Illinois Pattern Jury Instructions, Criminal, No.
3.11 (3d ed. 1992)(hereinafter IPI Criminal 3d No. 3.11) for prior
inconsistent statements. Defendant contends that the court s
previous ruling that Davis prior statement to the police could
only be used for impeachment required that the court separate each
of Davis inconsistent statements and advise the jury which
statement it could consider for impeachment purposes and which to
consider for substantive purposes. Defendant maintains that such
separation would comply with the committee notes to IPI Criminal
3d No. 3.11, which state, in pertinent part:
 "The Committee believes that all evidence is
 substantive unless limited to a non-substantive purpose, such
 as impeachment. That is why the Committee recommends that
 the first and last paragraphs of this instruction be given
 orally to the jury without bracketed material when the
 earlier inconsistent statement is being offered for a limited
 non-substantive purpose. This instruction should then be
 given again in the final, written instructions." IPI
 Criminal 3d No. 3.11, Committee Comments, at 82.
Defendant argues that this error was compounded when the
prosecutor, during closing arguments, made no distinction between
which statement could be considered for substantive evidence or
for impeachment purposes only. Defendant concludes that, as a
result of these errors, the jurors must have considered Davis'
statement to the police as substantive evidence; thus, improperly
bolstering Davis' credibility in favor of the State.
 Initially, we note that the committee comments to the jury
are advisory and the trial court is allowed to deviate from the
suggested instructions and format where necessary. People v.
Whitaker, 263 Ill. App. 3d 92, 98, 635 N.E 2d 1008 (1994). 
Nevertheless, our consideration of the instructions regarding
impeachment is similar to our view of the impeachment issue. 
Regarding those instructions, in our view, the portion of the
instructions regarding impeachment was improper on this issue. 
However, because of the grand jury testimony that was properly
admitted as substantive evidence, the improper instructions were
harmless error.
 V
 Defendant s last contention is that he was denied his right
to a fair trial where the State introduced prejudicial evidence
about the victim's family and made inflammatory remarks about the
family during closing argument. Defendant cites several comments
in which the State referred to Marvin Brown's family. The State
first commented about the family during opening argument. The
prosecutor stated, "the story begins with a man by the name of
Marvin Brown. Marvin Brown was a son, he was a husband, he was a
father, and regrettably he was a drug user." The prosecutor made
similar statements in closing argument. Defendant also refers this
court to statements elicited in Cliffie Brown's testimony. Cliffie
Brown, the victim's mother, testified as the life and death
witness. During the State's examination of Cliffie, the State
elicited that Marvin Brown had been married and had four children. 
Later, Faye Brown testified that she had been married to Marvin
Brown and that they had four children together. The State
maintains that the references to Marvin Brown's family were brief
and fleeting and, therefore, could not have resulted in
prejudicial error to the defendant. 
 Jury argument by the prosecution that dwells upon the
decedent's family or seeks to relate a defendant's punishment to
the existence of family is inflammatory and improper. People v.
Hope, 116 Ill. 2d 265, 275, 508 N.E.2d 202 (1986). However, every
mention of a deceased's family does not per se entitle the
defendant to a new trial. People v. Bartall, 98 Ill. 2d 294, 322,
456 N.E.2d 59 (1983). The prosecutor's comments in this case are
factually distinct from those cases in which the prosecution's
consistent comments about the victim's grieving family required
reversal. See People v. Bernette, 30 Ill. 2d 359, 371, 197 N.E.2d
436 (1964); People v. Hope, 116 Ill. 2d 265, 508 N.E.2d 202
(1986); People v. Logan, 224 Ill. App. 3d 735, 586 N.E.2d 679
(1991). Here, the prosecutor's comments can be characterized as
incidental. The defendant was not prejudiced by these comments.
 For the forgoing reasons, we do not find that the alleged
errors denied defendant a fair trial. Accordingly, the
defendant's conviction is affirmed.
 Affirmed.
 MCNULTY, P.J., and GORDON, J., concur.