THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ANTHONY FOSTER, Defendant-Appellant.

Third District   No. 78-481

Opinion filed March 31, 1980.

Robert Agostinelli and Charles Hoffman, both of State Appellate Defender's Office, of Ottawa, for appellant.

John X. Breslin, Terry A. Mertel, and Kenneth Wilhelm, all of State's Attorneys Appellate Service Commission, of Ottawa, for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

This is an appeal following a jury trial at which defendant, Anthony Foster, was found guilty of burglary. On October 26, 1977, the apartment of Paula Keller was burglarized. When the police arrived, Officer Jatkowski noticed that a screen had been removed from the back bedroom window. Officer Jatkowski also observed that on the outside of that window, an area of the dust residue present had been disturbed. He processed that area and developed and lifted a latent fingerprint impression, which contained one identifiable fingerprint. On November 1, 1977,

defendant was indicted and on November 3, 1977, he was arraigned. The matter was set for scheduling conference on January 19, 1978, and for jury trial on January 30, 1978. On January 30, the court continued the matter to the following day on its own motion.

On January 31, 1978, the case was called for trial. The defendant answered ready. The State represented that it would be ready after consideration of its motion for production of evidence, filed that morning. The motion sought an order requiring the defendant to submit to taking of his fingerprints, pursuant to Supreme Court Rule 413(a)(iii) (Ill. Rev. Stat. 1977, ch. 110A, par. 413(a)(iii)). The motion alleged that the fingerprint cards developed on the defendant as a result of his arrest in the case contained only palm prints; the only fingerprints of the defendant available to the State were those on the defendant's 1973 fingerprint card made by then Deputy Gilstrap; and that Mr. Gilstrap could not be present in court due to a death in the family. The motion further alleged that a lack of fingerprint testimony would severely prejudice the State's case.

Following argument, the court denied the State's motion. The prosecutor then moved for a continuance. This motion was also denied by the court. The prosecutor then moved for dismissal. Defense counsel stated that he had advised the defendant to object to the State's motion to dismiss and to demand immediate trial. The defendant, however, had instructed counsel not to object to the State's motion. In response to the court's inquiry, the defendant himself stated he would not object to the dismissal. The court then granted the State's motion to dismiss.

On the same day as the dismissal, the defendant was reindicted for the identical offense. On June 12, 1978, the case was called for trial. The jury returned a verdict finding defendant guilty of burglary and defendant filed a *pro se* motion to vacate which was denied. On appeal, defendant raises two issues: (1) whether the defendant was denied his right to due process of law by the prosecution's tactic of dismissal and prompt reindictment; and (2) whether defendant was denied effective assistance of counsel. We affirm.

Defendant's first issue is whether he was denied his right to due process by the prosecution's tactic of dismissal and prompt reindictment. Defendant contends the prosecution used this tactic solely to maneuver around the trial court's denials of the State's motions for fingerprints and for a continuance. The State's motions were addressed to the discretion of the court and it is clear that the trial court did not abuse its discretion. Defendant argues that dismissal and prompt reindictment nullified the rulings and power of the court and this constitutes a denial of due process.

The problem with the defendant's contention is that the defendant acquiesced in the dismissal. When the State moved to dismiss the indictment, the defendant's counsel stepped forward to say he had

advised his client to object to the motion and demand immediate trial. Defendant, however, wished not to object to the motion. The court specifically instructed the defendant that he had a right to object and Foster said he was not objecting. The defendant's counsel instructed defendant that the State could reindict him. The court then asked again if the defendant was going to object to the State's motion, and the defendant told the court to let them dismiss it. The court then stated that, the defendant not objecting to the motion, the motion was granted and the case dismissed.

■■ Under these circumstances we do not believe that the defendant's due process rights were denied. Defendant was informed as to the consequences of his actions and acknowledged that he understood them. The court asked several times if the defendant wanted to object, and the defendant said no. The defendant voluntarily relinquished his known right to object, with knowledge that he could be reindicted, and cannot now complain of it on appeal.

Defendant's second issue is that he was denied effective assistance of counsel. Defendant cites three specific instances in support of his allegation. First, he alleges his trial counsel was ineffective for failing to object to the State's reindictment of the defendant. Second, defendant alleges ineffectiveness by what he terms the unnecessary elicitation during cross-examination of State's witnesses of responses indicating that the defendant had a prior criminal record. Third, defendant alleges that failure to tender the full IPI instruction on circumstantial evidence constituted ineffective assistance of counsel.

Regarding the defendant's first contention, we have decided that there was no error in reindicting the defendant. Therefore, defendant was not deprived of effective assistance of counsel because his counsel failed to object to the reindictment.

Defendant's second contention concerns testimony regarding the defendant's fingerprints and actions. During cross-examination of two State's witnesses defense counsel asked questions which elicited responses indicating that defendant had a criminal record. The first witness was Officer Ganda. Officer Ganda testified on direct examination that he had compared the fingerprint from Keller's apartment with one of the prints located on the defendant's fingerprint card, which had been made on March 14, 1978. He also testified that he had made photo enlargements of them both to point out the specific detail of the comparison identification he had made.

On cross-examination, the witness stated he had made the photo enlargements only days before the trial. Defense counsel inquired why he had waited so long, and Ganda replied he had taken an original set of photographs on October 29, 1977, and had simply made a second set for

use at trial. Defense counsel asked when the witness had made his identification, and Ganda answered he had done so on October 29, 1977. Defense counsel then asked how the witness could have identified defendant's fingerprints in 1977 when the photograph of the print card and latent print were not made until June 1978. Ganda answered, "Because I used Mr. Foster's prior record." Following this answer, defense counsel objected on the grounds that the answer was not responsive, but before the court ruled on it, continued with the cross-examination.

The second witness was Officer Tokar, who testified he went to defendant's home to arrest him for burglary. When Tokar arrived, identified himself and announced his purpose, the defendant fled from the house. On cross-examination defense counsel asked if Tokar knew that the person he saw was the defendant. Tokar replied that he did. Defense counsel then asked how Tokar knew that and Tokar responded "through a police photograph."

Defendant contends that in both situations, defense counsel should have known what the answers were and not asked the questions so as to avoid mention of the defendant's criminal record. Defendant argues that asking these questions denied him effective assistance of counsel. We disagree.

Regarding Officer Ganda's testimony, it is clear from the record that defendant's theory of defense at trial was misidentification of the fingerprint found at Keller's apartment. Defense counsel's decision to pursue the apparent inconsistency in Officer Ganda's testimony was a judgment on his part that such testimony could support his theory of mistaken identification of the fingerprints. Such a choice of tactics does not demonstrate ineffective assistance of counsel. See *People v. Breitweiser* (1976), 44 Ill. App. 3d 284, 357 N.E.2d 890.

With regard to Officer Tokar's testimony, we do not see any harm in the question or the answer. Defense counsel was apparently trying to impeach Officer Tokar's identification and received an innocuous answer. A police photograph does not imply a prior record. It merely states that the police had a photograph of the defendant in their records. Thus, we do not believe that this question rendered defense counsel ineffective.

Defendant's final issue on appeal is whether trial counsel was ineffective for failing to tender the full IPI instruction on circumstantial evidence. We believe it was not. The distinction between direct and circumstantial evidence is often difficult to discern. Therefore, we believe that counsel's failure to discern that the defendant's case contained circumstantial evidence and tender the full instruction on circumstantial evidence does not amount to ineffective assistance of counsel. Nor do we

believe that this, in combination with the other actions of counsel alleged by defendant, constitutes ineffective aid of counsel.

For the abovementioned reasons, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

ALLOY, P. J., and SCOTT, J., concur.