THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PRENTICE TAYLOR, Defendant-Appellant.

Fourth District   No. 4—92—0625

Argued March 23, 1993.—Opinion filed April 22, 1993.

---

*Justice Cousins has read the briefs and listened to the tape in this appeal in place of Justice Lorenz, who has retired.

Daniel D. Yuhas and Jeffrey D. Foust (argued), both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and Denise M. Ambrose (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

After a jury trial in Champaign County circuit court, defendant, Prentice Taylor, was found guilty of public indecency. (Ill. Rev. Stat. 1991, ch. 38, par. 11—9(a)(2).) He appeals his conviction, arguing he was denied a fair trial because (1) the State's opening statement referred to other crimes by him; (2) testimony indicated his photograph provided to, and identified by, the victim was a "booking photograph"; and (3) the State's closing argument indicated the arresting officer immediately knew he committed the crime based on the victim's description of it. According to defendant, evidence of other crimes was not admissible because the State did not proffer sufficient evidence to permit such evidence under the *modus operandi* exception. We reverse defendant's conviction and remand for a new trial.

## I. FACTS

In January 1992, defendant was charged by information, alleging that on January 1, 1992, he stood in the doorway of the rest room of a Super Gas station located at 507 West University in Urbana, Illinois, and knowingly exposed his sex organ in a lewd manner with the intent to arouse his sexual desires.

In opening remarks, the prosecutor indicated the police officer who arrived at the scene had an idea about who the perpetrator was because of the victim's description of him. The prosecutor stated:

"As soon as [Jameson] or—excuse me—as soon as the defendant leaves, [Jameson] ended the call with the other person that works for Super Gas and called the police right away. Within minutes, the Urbana police officer, Andrew Charles[,] came to the Super Gas Station and he tried to locate the defendant and he was unable to find defendant. While Officer Charles was at the gas station, the telephone rang again. [Jameson] picked it up. It was the defendant. He said something to the effect, and you will hear [Jameson's] testimony here today, something to the effect that why did you call the police. She handed the phone immediately over to Officer Charles[,] who at that time had an idea as to who the defendant was, because of her description of the defendant to Officer Charles and then he hung up. [Jameson] at that time also told Officer Charles that she would have no problem identifying the defendant. So, that's [Jameson]. You will hear from [Jameson] here today. You will also hear from Officer Charles. He will testify that he recog-

nized [Jameson's] description of the defendant right away. Also Officer Charles had knowledge of defendant."

The trial judge sustained defense counsel's objection to the preceding remarks; however, he overruled defense counsel's objections to the following observations made next by the prosecutor:

"Also, as to [Jameson's] description to Officer Charles of what happened that evening, he had a better idea as to who the defendant was.

\* \* \*

Who the defendant was and who specifically was standing at the bathroom on January 1st while [Jameson] was watching him stroke his penis."

Kimberly Jameson testified she was a salesclerk for Super Gas located on University Avenue in Urbana. On January 1, 1992, at 7 p.m. she received a telephone call from a man who said his name was Andrew. He told Jameson he would arrive at the station in 15 minutes, go into the rest room, crack the door open, and "give [Jameson] a show." The caller also told her he had been at the station earlier in the week and had tried to touch her stomach. Jameson was eight months pregnant at that time.

Fifteen minutes later, a man arrived at the station and entered the rest room, which was in a separate building approximately 15 feet away. The station was brightly lit. Jameson looked out the window of the building where she was stationed and saw the man open the door, pull his pants down and begin stroking his penis.

Jameson had telephoned the manager of the Super Gas station across town to apprise him of the phone call. She remained on the phone while the man was at the station so the manager could call the police if the perpetrator threatened her. Jameson observed the man for approximately five minutes. No customers entered the station during this time. When the man departed from the rest room, he motioned for Jameson to come to him. She hung up the phone and immediately called the Urbana police department.

Officer Charles arrived a few minutes later. He unsuccessfully searched the vicinity for the suspect. Jameson received a call from a man who asked her why she phoned the police. The caller stopped talking when Jameson handed the phone to Charles. Jameson informed Charles she could identify the man and she provided him a description.

The prosecutor asked Charles what he did after Jameson provided defendant's description to him. Charles stated the following before defense counsel's objection was sustained and an offer of proof outside

the jury occurred: "Based upon her description of the suspect and the events that had occurred reminded me of several other—."

On the offer of proof, Charles testified that based on Jameson's description of the event and the suspect, he believed the perpetrator might be defendant. Charles testified he had been involved in three additional incidents involving similar conduct by defendant. These incidents occurred at American Nursing Home, Royal Fontana Nursing Home, and Carle Hospital. According to Charles, the circumstances of these incidents were the same, apparently, as the incident at issue:

"The suspect called the victim before they [sic] showed up. Showed up very promptly and the wording is similar, about I am going to put on a show or some sort of show being put on and *** they are all almost on a direct line from [defendant's] house going across town."

The prosecutor explained she intended to introduce copies of defendant's convictions for public indecency and the officer's testimony about the facts surrounding those convictions to prove circumstantial evidence of defendant's identity under the *modus operandi* exception to the general rule excluding other crimes evidence. The prosecutor later indicated defendant had recently been convicted of only one public indecency charge for the incident which occurred at the Royal Fontana Nursing Home. The additional indecency charges had been dismissed in exchange for guilty pleas in other cases.

Defense counsel objected on the grounds of relevance and contended the danger of prejudice by such evidence outweighed any probative value. The trial judge concluded there were distinctive features in each case for the *modus operandi* exception to apply, but concluded the officer's proposed testimony and evidence of defendant's conviction was inadequate to establish the requisite details of the other incidents without testimony from the victims of the other cases.

When the jury was returned to the courtroom, the trial judge explained he was sustaining defense counsel's objection to Charles' testimony. Charles' testimony continued. After Jameson described the perpetrator, Charles returned to the police station and retrieved photographs to show Jameson. Jameson had described the perpetrator as a black male in his thirties, of medium height and build. Charles returned to show Jameson the photo lineup. Over defense counsel's objection, Charles testified he covered the bottom third of the photographs with paper because they were booking placards.

After he arranged the photo spread, he told Jameson she could look at the photographs as closely as she liked but that she could not pick them up from the counter. As Jameson approached the photo ar-

ray, she identified defendant's photograph as the perpetrator. Charles asked her to look again and tell him how certain she was of her identification. Over defense counsel's objection, Jameson testified she was 100% certain defendant was the perpetrator.

On the second day of trial, the prosecutor indicated she had subpoenaed the complaining witness in one of defendant's public indecency cases that was dismissed pursuant to plea negotiations. The alleged subpoena does not appear in the record on appeal. The prosecutor abandoned her attempt to offer other crimes evidence and rested. Defendant's motion for a directed verdict was denied.

Defendant testified that on January 1, 1992, between 6 and 8 p.m., he was at his mother's home with Pamela Emery. They were watching television and eating. He never left the house on January 1. He denied he and Emery drank alcohol that night and explained his mother does not allow alcohol in her home. He conceded he was convicted of a felony offense in Champaign County in November 1987.

Emery testified she was in defendant's company from December 29, 1991, to January 4 or 5, 1992. She knew defendant for three or four years and considered him to be a casual friend. They had sexual relations in the past. Emery testified she had been convicted of misdemeanor theft and a felony offense. Over objection, the prosecutor was allowed to elicit testimony indicating Emery was unemployed. Emery testified on January 1, she and defendant watched a football game and a few horror movies and then listened to music. Contrary to defendant's testimony, Emery stated she and defendant consumed alcohol on January 1.

At the instructions conference, the prosecutor withdrew the limiting instruction regarding other crimes evidence because she had not introduced evidence of defendant's *modus operandi*. During closing argument, defense counsel's objection was overruled when the State argued: "[a]nd just by the description, the police officer knew who it was that called her and knew who it was that performed *** [w]ho was performing this lewd act in front of [Jameson]." At a later point, the following argument took place during closing:

> "[Prosecutor]: *** Officer Charles also knew who the defendant was.
>
> [Defense counsel]: Objection.
>
> [THE COURT]: Objection will be sustained. That line of argument, the jury is to disregard it.
>
> [Prosecutor]: Officer Charles was given more than just a description of the defendant that evening. He was also given a description of the entire incident. The phone call where the

gentlemen on the phone or the male on the phone \*\*\* said I am going to come over and put on a show. It was from all of this.

[Defense counsel]: Objection.

[THE COURT]: Objection overruled.

[Prosecutor]: It was from all of this that Officer Charles had an idea.

[Defense counsel]: Objection.

[THE COURT]: Objection overruled.

[Prosecutor]: Who the person was that masturbated in front of [Jameson] that day. There is no question about it. It was defendant. Thank you."

## II. ANALYSIS

■ Although the State does not argue this as a basis of waiver of each argument raised by defendant on appeal, we note all of defense counsel's objections at the trial level were general. At trial, defense counsel merely stated "objection" to each alleged error and indicated no basis for each alleged error. At the hearing on defendant's motion for a new trial, counsel was provided an opportunity to more fully discuss her alleged errors which were indicated in her motion, again, only as errors. No reasons were provided about why these rulings were wrong. The prosecutor even indicated she was uncertain what defense counsel's objection was to Charles' testimony related to the booking placards. Defense counsel made no attempt to clarify her objection. Defense counsel did indicate during this hearing that the objection to the prosecutor's remarks in closing was because the remarks implied Charles knew about defendant's prior convictions and this suggested defendant had a propensity to commit the alleged offense.

Failure to properly inform the trial judge of the specific basis for an objection may result in waiver of the issue on appeal. (*People v. Garcia* (1983), 97 Ill. 2d 58, 86, 454 N.E.2d 274, 285-86; *People v. Pastorino* (1982), 91 Ill. 2d 178, 192, 435 N.E.2d 1144, 1151.) However, we choose to address the alleged errors because the evidence is closely balanced and these errors may have resulted in denying defendant a fair trial. *People v. Enoch* (1988), 122 Ill. 2d 176, 199, 522 N.E.2d 1124, 1135-36.

The State argues even if the prosecutor's remarks and Charles' testimony caused the jury to infer defendant had been previously arrested, the prejudicial effect was minimized because defendant testified he had previously been convicted of a felony. It directs us to this

court's reasoning in *People v. O'Toole* (1992), 226 Ill. App. 3d 974, 991-92, 590 N.E.2d 950, 962. However, in *O'Toole*, defendant's objection was sustained and the jury was instructed to disregard the improper reference to defendant's criminal record. Another important factor in this case is that the testimony and remarks complained of did not merely intimate defendant had a criminal past. They suggested defendant's criminal past involved conduct similar to that he was currently charged with.

The State also directs us to *People v. Sayles* (1985), 130 Ill. App. 3d 882, 889-90, 474 N.E.2d 870, 876-77, arguing any prejudicial effect is far outweighed by the overwhelming evidence in this case. However, in *Sayles*, this court approved the admission of other crimes evidence as relevant and only noted if this evidence were prejudicial, this concern was outweighed by the overwhelming evidence against defendant.

Contrary to the State's contention, we do not view the evidence in this case as overwhelming. The State's case consisted of testimony by the victim of the offense. The victim identified defendant in a photo lineup and in court the day of trial. However, the State provided no additional evidence linking defendant to the crime, such as that defendant owned similar clothing to that worn by the perpetrator on the night in question, or voice identification. Nor did the prosecutor properly present evidence of other crimes based on the *modus operandi* theory.

Defendant testified he was at his mother's home the entire night the incident occurred. Defendant's acquaintance, Emery, corroborated defendant's testimony. Although Emery could not remember specifically what they viewed on television on January 1, neither this potential weakness in her testimony, nor the fact Emery was unemployed or previously had sexual relations with defendant, defeats defendant's claim of innocence. The evidence was closely balanced.

### A. *Opening Remarks*

Defendant initially contends it was error to allow the prosecutor to argue in her opening remarks that Charles "had an idea about the identity of the perpetrator because of Jameson's description of the suspect." According to defendant, the prosecutor was required to establish the other crimes evidence was admissible before she could comment on Charles' recognition based on the victim's description.

The State argues defendant has waived review of this alleged error because although defense counsel objected to the remarks, she did not raise this as error in defendant's post-trial motion. Failure to do

so can result in waiver of the issue on appeal. (*Enoch*, 122 Ill. 2d at 186, 522 N.E.2d at 1130; *People v. Jones* (1991), 222 Ill. App. 3d 206, 209-10, 583 N.E.2d 623, 626.) As previously discussed, we choose to evaluate whether the alleged errors amount to plain error and whether defendant was denied a fair trial because of these errors.

The State contends because the prosecutor's remarks in opening argument were potentially admissible when they were made, defendant's accusation of intentional prosecutorial misconduct fails. The purpose of the opening statement is to inform the jury of evidence each party expects to prove at trial. (*People v. Eichelberger* (1989), 189 Ill. App. 3d 1020, 1030, 546 N.E.2d 274, 280.) It can be prejudicial error for counsel to relate inadmissible evidence in opening remarks with apparent disregard for its subsequent inadmissibility. *People v. Melock* (1992), 149 Ill. 2d 423, 457, 599 N.E.2d 941, 956.

Evidence of other crimes or wrongful misconduct is inadmissible if it is only relevant to establish the defendant's propensity to commit crimes. (*People v. King* (1986), 109 Ill. 2d 514, 530, 488 N.E.2d 949, 958; *People v. Crayton* (1988), 175 Ill. App. 3d 932, 945-46, 530 N.E.2d 651, 660.) Such evidence is admissible, however, to prove defendant's *modus operandi*. (*People v. Evans* (1988), 125 Ill. 2d 50, 82, 530 N.E.2d 1360, 1374; *O'Toole*, 226 Ill. App. 3d at 991, 590 N.E.2d at 961.) The State concedes it did not proffer sufficient evidence to support Charles' testimony under the *modus operandi* theory. The prosecutor conceded this during the instructions conference when she withdrew a related instruction because she had not provided a sufficient basis for this exception to the other crimes evidence rule.

■ During opening remarks, the prosecutor may have anticipated she had a sufficient basis to seek admission of other crimes evidence. She initially intended only to submit records of defendant's convictions of similar crimes and have Charles testify about the additional incidents. However, when the trial judge informed her she would also have to provide testimony from past victims of these similar occurrences, the prosecutor allegedly subpoenaed a past victim who did not appear the second day of trial. Despite the State's failure to document this subpoena, the record of the discussion between the prosecutor and the trial court during the offer of proof supports the view the prosecutor may reasonably have thought she would be permitted to submit such evidence.

Better practice in seeking to admit other crimes evidence would have been to seek authorization for its admission before trial *or* opening remarks. However, that she included the complained-of remark, which may have suggested defendant had committed previous crimes,

without seeking a pretrial ruling does not automatically amount to denial of a fair trial for defendant.

The State alternatively contends these references in the prosecutor's opening and closing arguments were meant merely to explain how Charles conducted his investigation and to describe the events leading to defendant's identification and were unrelated to other crimes evidence against defendant. Despite the State's characterization of the prosecutor's intent in her opening remarks, the remarks suggested far more than the *procedure* Charles used in assisting the victim in identifying defendant.

The State's brief nearly concedes Charles knew how to quickly apprehend defendant because of defendant's previous police contacts for the same kind of activity when it states the victim could provide Charles only with a description which would fit many men. Nonetheless, "on the basis of the description of the event and the suspect, Officer Charles managed to compile a photographic array that included the perpetrator's photograph within an hour and a half of the event."

The prosecutor did not need to state that from Jameson's description, Charles had a better idea as to "[w]ho the defendant was and who *specifically* was standing at the bathroom on January 1st while [Jameson] was watching him stroke his penis" (emphasis added) to communicate the speed with which Charles apprehended defendant. However, the statement does not necessarily amount to a declaration Charles knew the perpetrator was defendant because of his previous record. Rather, it suggests Charles knew defendant's description and perhaps other characteristics. Charles may have known defendant from contacts other than from defendant being accused of crimes.

Standing alone, the complained-of remarks in the prosecutor's opening arguments do not require reversal. However, we will consider them in conjunction with the additional alleged errors.

### B. *Defendant's Identification*

Defendant next argues it was error for the trial judge to permit testimony by Charles regarding how he covered the bottom third of the photographs he showed to Jameson because they were the booking placards. Defendant cites *People v. Arman* (1989), 131 Ill. 2d 115, 545 N.E.2d 658. The State contends no error occurred because testimony about the use of mug shots during an investigation may be introduced to show how a defendant was initially linked to the offense. The State also relies on *Arman* for its argument.

When identification is a material issue in a case, testimony related to the use of mug shots in the investigation may be introduced to

show how a defendant was initially linked to the offense. However, such evidence is "not without limits," and if it tends to inform the jury the defendant committed an unrelated, criminal act, it should not be permitted. *Arman*, 131 Ill. 2d at 123, 545 N.E.2d at 662.

In *Arman*, the court concluded the officer's testimony, which indicated the photograph came from the Chicago police department's identification files, informed the jury the person depicted had been previously arrested and, therefore, should not have been admitted. However, the court upheld the defendant's conviction because it concluded the result would have been no different had the photograph not been admitted. Also of importance to the outcome in the present case is that in *Arman*, the trial judge had sustained defendant's objection to this testimony and later admonished the jury to disregard questions to which objections had been sustained. *Arman*, 131 Ill. 2d at 124, 545 N.E.2d at 662-63.

■ Although in this case Charles could have testified he retrieved photographs from the police station for the victim to view, Charles' indication he covered the booking placards at the bottom of the photographs was completely unnecessary to the issue of identification or the procedure Charles used in obtaining defendant's identification from the victim.

The additional cases cited by the State are distinguishable. In several cases cited, the information provided to the jury about defendant's identification could have indicated something other than that defendant had a prior record or had been arrested. *People v. Gordon* (1981), 94 Ill. App. 3d 764, 767, 419 N.E.2d 66, 69 (fingerprints may be on file with police for numerous reasons); *People v. Prewitt* (1987), 160 Ill. App. 3d 942, 949, 513 N.E.2d 977, 982 (fingerprints may be on file with police for numerous reasons *and* defendant did not object to testimony or seek to have jury instructed to disregard); *People v. Foster* (1980), 82 Ill. App. 3d 634, 638, 402 N.E.2d 943, 946 (police photograph does not imply defendant has a police record).

*People v. Carr* (1992), 225 Ill. App. 3d 170, 175-76, 587 N.E.2d 543, 548, is also distinct because the testimony at issue in this alleged forgery case was provided by a police officer and related to similar checks being cashed in the same manner in a different locality. The court reasoned this testimony did not intimate defendant was involved in the similar incidents. Unlike *Carr*, Charles' testimony indicating defendant's photograph from the police department had a booking placard clearly indicates defendant had been previously arrested.

This case is more akin to the second district ruling in *People v. Moscatello* (1969), 114 Ill. App. 2d 16, 30, 251 N.E.2d 532, 538, in

which the court concluded the prosecutor's characterization of defendant's photo as a "mug shot[ ]" was improper but not reversible error because the trial judge promptly sustained defense counsel's objection, the photo was not admitted into evidence, and no additional reference was made to the defendant's criminal record.

*People v. Sledge* (1989), 183 Ill. App. 3d 1035, 1047-48, 539 N.E.2d 1312, 1319-20, is also similar to this case. In *Sledge* a police detective characterized the defendant's second photo lineup as "booking photographs." Although improper, the court concluded this did not amount to reversible error because the trial judge held an extensive hearing outside the jury's presence to determine the substantive damage caused by the remark. The trial judge admonished the jury to disregard the reference to the photo and no additional references were made to the type of photograph used or to imply defendant had a criminal record.

Similarly, in the first district case, *People v. Pendleton* (1982), 104 Ill. App. 3d 1104, 1108, 433 N.E.2d 1076, 1080, the trial judge admonished the prosecutor out of the jury's presence that she should refrain from again using the term "mug shots" in referring to defendant's photograph. When a police officer later mentioned "mug shots" from "mug books" in his testimony about photographs of defendant, the trial judge struck this terminology the third time it was used. The appellate court concluded this was not reversible error because in each instance the trial judge took precautionary measures to prevent further mention of these terms.

Although in the present case the photo was not admitted into evidence, the trial judge rejected defense counsel's objection and the prosecutor's comments in his opening and closing remarks suggested defendant had previously been arrested. The Illinois Supreme Court has indicated "[t]he error in revealing a prior arrest is obvious." (*People v. Warmack* (1980), 83 Ill. 2d 112, 128, 413 N.E.2d 1254, 1262.) However, we must evaluate whether the outcome would have been different if this testimony were not admitted or defense counsel's objection was sustained. (*Arman*, 131 Ill. 2d at 124, 545 N.E.2d at 662; *Warmack*, 83 Ill. 2d at 128-29, 314 N.E.2d at 1262.) Considering Charles' testimony and the prosecutor's opening and closing remarks, defendant was denied a fair trial.

This case presents different circumstances than *People v. Eston* (1977), 49 Ill. App. 3d 747, 751, 364 N.E.2d 609, 612, where this court concluded a police officer's reference to "mug shots" of defendant during his testimony did not amount to plain error because the prosecutor did not elicit the remark, no mug shots were produced in court,

and the prosecutor did not refer to mug shots. Charles' reference to a booking placard on the photograph of defendant shown to the victim again interjected the "other crimes" theme and, while standing alone it would not amount to plain error, we will consider it in conjunction with defendant's last contention of error.

## C. *Prosecutor's Closing Remarks*

Defendant finally argues the prosecutor committed error by commenting in closing argument on defendant's prior crimes. A prosecutor has great latitude in closing argument. The trial judge's determination about the propriety of remarks should be followed absent a clear abuse of discretion. A prosecutor may comment on the evidence and suggest inferences which are deducible from the evidence even if they are unfavorable to the defendant. (*People v. Johnson* (1992), 149 Ill. 2d 118, 145, 594 N.E.2d 253, 267; *People v. Roe* (1992), 228 Ill. App. 3d 628, 638, 592 N.E.2d 596, 603.) Although a remark may exceed the bounds of reason, the verdict should not be disturbed unless the remark caused the defendant substantial prejudice. *Johnson*, 149 Ill. 2d at 145, 594 N.E.2d at 267; *People v. Baptist* (1979), 76 Ill. 2d 19, 29, 389 N.E.2d 1200, 1205.

The trial judge properly sustained defendant's objection when the prosecutor stated Charles *knew* who the defendant was. However, the judge overruled the objection after the prosecutor stated that from the description of the entire incident, Charles *had an idea* who the person was that committed the offense and that person was defendant. The language in the second exchange also suggested to the jury that Charles suspected defendant was the perpetrator because defendant had previously been involved in similar incidents. Also, the trial judge earlier permitted the prosecutor to state in her closing remarks that Charles knew who called the victim and performed the lewd act just by the victim's description.

Moreover, although the jury was admonished to disregard after defense counsel's objection, Charles had initially told the jury that when he received the victim's description of the incident he was reminded of "several other ***." The prosecutor's closing remark intimated to the jury Charles identified defendant as the perpetrator because defendant had previously been involved in similar conduct. This suggestion impaired the integrity of the trial process.

■ This statement, combined with the opening remark, the booking placard remark, and the closing remarks, strongly suggested defendant had previously been arrested for similar conduct. Under the circumstances in this case, such evidence may have overpersuaded the

jury to convict defendant merely because he was a bad person deserving of punishment rather than on the basis of the facts related to the offense for which he was on trial. *People v. Lindgren* (1980), 79 Ill. 2d 129, 137, 402 N.E.2d 238, 242.

## D. *Conclusion*

The trial judge sustained several of defense counsel's objections. He also instructed the jury that opening and closing statements were not evidence and the jury should disregard any remarks made by counsel which were not based on evidence. However, the proceedings were fatally flawed due to actions by the prosecutor. The jury may have reached a different result if it had not heard the prosecutor's remarks on top of Charles' testimony. *People v. Mullen* (1990), 141 Ill. 2d 394, 407, 566 N.E.2d 222, 228; *Baptist*, 76 Ill. 2d at 28-30, 389 N.E.2d at 1205.

The prosecutor has a duty to ensure defendant receives a fair trial. Defense counsel's failure to properly object does not alleviate that duty. (*People v. Oden* (1960), 20 Ill. 2d 470, 483, 170 N.E.2d 582, 589; *People v. Dunsworth* (1992), 233 Ill. App. 3d 258, 269, 599 N.E.2d 29, 36; *People v. Graham* (1989), 179 Ill. App. 3d 496, 508, 534 N.E.2d 1382, 1390.) This duty was not upheld. If the prosecutor intended to produce other crimes evidence against defendant, she should have filed a motion *in limine before* trial seeking a ruling on such evidence. The prosecutor in this case made remarks which were prejudicial to the defendant's trial. She also should have instructed Charles regarding proper testimony about defendant's photograph identification by the victim. We do not suggest the prosecutor engaged in purposeful misconduct, but the prosecutor's conduct compels this court to reverse defendant's conviction.

Although each error standing alone would not require reversal, the impact of the error interjecting the other crimes theme three different ways, convinces this court defendant may have been denied a fair trial. See *People v. Kidd* (1992), 147 Ill. 2d 510, 544-45, 591 N.E.2d 431, 447; *People v. Smith* (1990), 141 Ill. 2d 40, 67, 565 N.E.2d 900, 911.

Reversed and remanded.

COOK and GREEN, JJ., concur.