THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STANLEY DAVIS, Defendant-Appellant.

First District (4th Division)   No. 1—94—3601

Opinion filed December 26, 1996.

Linda Eigner, of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, William Carroll, and Eileen M. O'Neill, of counsel), for the People.

JUSTICE CERDA delivered the opinion of the court:

Following a jury trial, defendant, Stanley Davis, was convicted of two counts each of armed robbery (720 ILCS 5/18—2(a) (West 1992)) and aggravated unlawful restraint (720 ILCS 5/10—3.1 (West 1992)) in connection with the robbery of a jewelry store, and was sentenced to 25 years' imprisonment. On appeal, defendant asserts that (1) the trial court improperly admitted hearsay testimony; (2) the trial court erred in allowing testimony that he had a police record and used an alias; (3) the State's eyewitness testimony was improperly bolstered; (4) cumulative errors denied him a fair trial; and (5) he did not receive effective assistance of counsel. For the following reasons, we affirm.

Enis Cirkic, who owned Ennes Jewelers at 2356 W. Devon Street in Chicago, testified that at 5:50 p.m. on December 2, 1991, he was working with his wife, Enisa, his son, Elvis, and an employee named Idhan Tahirovic. Entering the store from the street, there were glass jewelry showcases on the left side, right side, and at the back wall. Defendant came into the store and went to the back showcase, which contained diamond rings. He was wearing a short fur jacket, expensive-looking boots, expensive jewelry, a watch, and a brown cap. He asked Enisa several questions about the jewelry before Enis started talking with him. Two or three minutes later, while defendant was looking at a diamond ring, Idhan let another man into the store.

Defendant's partner walked between the left and right showcases before drawing a gun, using it to motion to Idhan and Elvis. As he told them "move" or "let's go," defendant stepped back, put a yellow leather bag on the floor, and put his fur jacket on a chair behind the back showcase. He then told Enis, "Be quiet and move from the showcase." Defendant jumped over the showcase by putting both his hands on the showcase, then took handcuffs and silver duct tape from the leather bag. He threw the handcuffs to the gunman, who put them on Enisa and Idhan. After the gunman told the victims to get on their knees, he instructed Elvis to handcuff himself to Enis.

Defendant started to take the jewelry from a showcase while the gunman searched the victims and took $80 from Enis. When a bus stopped in front of the store, defendant instructed the gunman to take the victims to the back room, where they sat on the floor. Defendant stayed in the front of the store.

The gunman closed the door to the back room and instructed Elvis to tape his legs. While he was checking to see if Elvis had complied, Enis jumped him and grabbed his hands. They struggled for the gun, which went off. All the victims jumped at the gunman and got him to the ground. He had been shot and died as a result of the wound.

Enis slowly went to the front of the store to see if defendant was still there. When the victims realized that defendant was gone, Elvis ran across the street to call the police. Three days later, Enis viewed a lineup from which he could not identify anyone. However, on March 12, 1992, he identified defendant from another lineup.

The testimony of Enisa, Elvis, and Idhan was substantially the same as Enis' testimony. All three victims identified defendant at the March 12, 1992, lineup and in court.

Officer Stanley Mocodlo, a latent fingerprint examiner for the Chicago police department, identified the three palmprints found at the robbery scene as defendant's.

Chicago police detective William Baldree, who investigated the robbery, testified that he received information about the robbery from four informants. Based on that information, he went through the Secretary of State's computer system with the partial license plate number of "XUF" and the name Stanley, which led him to defendant, who owned a car similar to the one police were seeking. Baldree got defendant's picture because he had a police record and showed it to Enisa and Idhan along with four other photographs. Based on their identification of defendant from the photo array, Baldree obtained an arrest warrant for defendant.

The State presented testimony from the victims of two similar jewelry store robberies, which had occurred in October and November 1991. One of the eyewitnesses testified that defendant and another robber left the scene in a small silver Chevy. The eyewitness from the third robbery testified that defendant left in a large car with two other people.

After the State rested its case in chief, Janice Woodfork testified that she was with defendant until 1 p.m. on December 2, 1991, when he left to go shopping. He returned at 3:20 p.m., and at 6 p.m., Woodfork, defendant, and defendant's mother went to a laundromat where they stayed until 10 p.m.

Defendant's mother, Lolita Davis, testified that she went to the laundromat with Woodfork and defendant on December 2, 1991, sometime after 5 p.m. and stayed until 10 p.m. She also testified that defendant had never owned a small silver car and that she did not know the license plate number of his brown Chevy Caprice.

Defendant testified that he was with Woodfork on December 2, 1991, until he left to go shopping at 12:35 p.m. At 2:15 p.m., he entered Ennes Jewelers to buy a ring for his uncle. He stayed eight minutes, then returned home. Later, he went to the laundromat with his mother and Woodfork.

■ Defendant raises several trial errors to which he did not object or include in his post-trial motion. Although they generally would be waived (*People v. Williams*, 165 Ill. 2d 51, 60, 649 N.E.2d 397 (1995); *People v. Enoch*, 122 Ill. 2d 176, 186, 522 N.E.2d 1124 (1988)), defendant contends that the alleged errors amounted to plain error and, alternatively, that his attorney's failure to preserve the issues denied him his right to the effective assistance of counsel. Since defendant claims that his attorney's failure to object to the testimony denied him the effective assistance of counsel, we will review the alleged trial errors. *People v. Barrow*, 133 Ill. 2d 226, 274, 549 N.E.2d 240 (1989); *People v. Gonzalez*, 238 Ill. App. 3d 303, 314, 606 N.E.2d 304 (1992).

Defendant asserts that he was prejudiced by Detective Baldree's testimony regarding his investigation. Specifically, defendant complains of Baldree's testimony that informants gave him the name "Stanley" and part of defendant's license plate number, "XUF," when they were interviewed in connection with this crime. Defendant argues that the State enhanced the prejudicial effect of these alleged errors by drawing attention to them during its cross-examination of defendant's mother and its closing argument.

■ A police officer may reconstruct the steps taken in a crime investigation and may describe the events leading up to the defendant's arrest if that testimony is necessary and important to explain the State's case to the jury (*People v. Simms*, 143 Ill. 2d 154, 174, 572 N.E.2d 947 (1991)), but the officer's testimony must be limited to the fact that he spoke to a witness without disclosing the contents of that conversation (*People v. Henderson*, 142 Ill. 2d 258, 303, 568 N.E.2d 1234 (1990)). There is a distinction between an officer testifying to the fact that he spoke to a witness without disclosing the contents of that conversation and an officer testifying to the contents of the conversation, which is inadmissible hearsay. *People v. Gacho*, 122 Ill. 2d 221, 248, 522 N.E.2d 1146 (1988); *People v. Trotter*, 254 Ill. App. 3d 514, 527, 626 N.E.2d 1104 (1993). Furthermore, if testimony of the conversation's contents is presented, the trial court must instruct the jury that it was introduced for the limited purpose of explaining what caused the police to act and that the jury is not to accept the statement as true. *Simms*, 143 Ill. 2d at 174; *Trotter*, 254 Ill. App. 3d at 527.

■ Based on those principles, we find that the State's conduct was improper. It was improper and unnecessary to tell the jury that several informants told the police that someone named Stanley was involved in this robbery, that his license plate included "XUF," and that a computer check led the police to defendant. Furthermore, it was error to use the automobile testimony from the victims of the other robberies to link those cars with this robbery because there was no evidence that any car was used here. Moreover, none of the eyewitnesses in the other robberies saw even a partial license plate number and they gave conflicting testimony about the description of the car in which the robbers fled. The State further compounded its error in its closing statement, when it remarked that defendant's mother's testimony about defendant's car tied him to the informant's information.

■ Defendant further argues that he was prejudiced by Baldree's testimony that he obtained defendant's photograph because he had a Chicago police record and that defendant's automobile was registered

under an alias. Defendant maintains that the evidence was irrelevant and served only to inform the jury of his prior criminal activity. The State responds that the evidence was proper because it chronicled the police investigation and provided a basis for defendant's identification.

Testimony that a defendant has previously been arrested should not be admitted into evidence (*People v. Lampkin*, 98 Ill. 2d 418, 430, 457 N.E.2d 50 (1983)), and a defendant's alias can be admitted into evidence only if the evidence is relevant to some fact at issue in the case (*People v. Brown*, 146 Ill. App. 3d 101, 105, 496 N.E.2d 1020 (1986)). Since defendant's prior police record and use of an alias were irrelevant to any issue in the trial, Baldree's testimony was improper.

■ Next, defendant asserts that the State improperly bolstered the eyewitness identifications of defendant by introducing inadmissible evidence that, prior to viewing the lineup from which they identified defendant, they viewed another lineup during which they identified no one. The State concedes that the testimony was inadmissible.

■ Although there were several trial errors, those errors were harmless in that they did not prejudice defendant. Reversal is not required where the record affirmatively shows that the error was not prejudicial. *People v. Richardson*, 123 Ill. 2d 322, 342, 528 N.E.2d 612 (1988). This is a very unusual case because all the eyewitnesses positively identified defendant as one of the robbers. Two of those eyewitnesses talked extensively with defendant before he robbed them. In addition, three of defendant's partial palmprints were found on the glass showcase. The record shows that those palmprints could not have been on the showcase for more than an hour. There was also evidence of defendant's similar *modus operandi* in other nearby jewelry store armed robberies.

In making our decision, we have reviewed any effect the improperly admitted evidence may have had on the other evidence introduced at trial and the conduct of the defense. *Fahy v. Connecticut*, 375 U.S. 85, 87, 11 L. Ed. 2d 171, 173-74, 84 S. Ct. 229, 230-31 (1963). Due to the overwhelming evidence of defendant's guilt, we conclude that retrial without the erroneous admission of the trial errors would produce no different result. *People v. Arman*, 131 Ill. 2d 115, 124, 545 N.E.2d 658 (1989); *People v. Lash*, 252 Ill. App. 3d 239, 624 N.E.2d 1129 (1993).

■ Defendant also contends that the State improperly bolstered its other crimes evidence with an inadmissible hearsay identification from a different armed robbery. Defendant complains that George Layous, who testified that defendant robbed him at gunpoint in his

jewelry store in November 1991, stated that one of his employees, Tony Nahhas, had been present during the robbery, but he was not in court because he was working. Detective James Gildea then testified that Nahhas had identified defendant in a March 1992 lineup.

Hearsay identification is reversible error only when it serves as a substitute for courtroom identification or when it is used to strengthen or corroborate a weak identification. *People v. Colon*, 162 Ill. 2d 23, 34, 642 N.E.2d 118 (1994); *People v. Johnson*, 202 Ill. App. 3d 417, 426, 559 N.E.2d 1041 (1990). If it is merely cumulative or supported by a positive identification and by other corroborative circumstances, it constitutes harmless error. *Colon*, 162 Ill. 2d at 34; *Johnson*, 202 Ill. App. 3d at 426. Since Nahhas' out-of-court identification of defendant was merely cumulative and was supported by positive in-court identifications by the victims in this crime, the error is harmless.

■ Defendant's next claim of error is that he was prejudiced because the mugshot sent to the jury room during deliberations included information of his arrest for a prior crime. The date of November 10, 1986, was on a placard around his neck, and on the back, the following was listed:

"Davis, Stanley
7/1/1972
AKA: Coleman."

When identification is a material issue at trial, testimony related to the use of mugshots in an investigation may be introduced to show how a defendant was initially linked to the commission of an offense. *Arman*, 131 Ill. 2d at 123; *People v. Taylor*, 244 Ill. App. 3d 806, 815-16, 612 N.E.2d 943 (1993). Such evidence, however, is "not without limits," and if it tends to inform the jury that the defendant committed an unrelated criminal act, those photos should not be admitted in evidence or shown to the jury. *Arman*, 131 Ill. 2d at 123; *People v. Dunigan*, 263 Ill. App. 3d 83, 635 N.E.2d 522 (1994); *Taylor*, 244 Ill. App. 3d at 816.

Although we agree with defendant that the mugshot should have been altered to remove any information of his prior arrest, the trial court did not abuse its discretion. The decision as to which evidence should be taken into the jury room is within the trial court's discretion and will not be disturbed absent an abuse of that discretion. *People v. Shum*, 117 Ill. 2d 317, 353, 512 N.E.2d 1183 (1987).

■ We also find that the failure of defendant's attorney to object to the trial errors was not ineffective assistance of counsel because it did not prejudice defendant. A reviewing court does not have to decide if the attorney's performance was deficient before it examines any prejudice suffered by the defendant as a result of the alleged defi-

ciency. *Strickland v. Washington*, 466 U.S. 668, 697, 80 L. Ed. 2d 674, 699, 104 S. Ct. 2052, 2069 (1984). To show prejudice, the defendant must demonstrate that there was a reasonable probability that, but for the attorney's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068. Defendant failed to make such a showing.

For those reasons, we affirm the circuit court's judgment.

Affirmed.

TULLY, P.J., and GALLAGHER, J., concur.