FOURTH DIVISION
 DECEMBER 26, 1996

No. 1--94--3601

THE PEOPLE OF THE STATE OF ILLINOIS,

 Plaintiff-Appellee,

 v.

STANLEY DAVIS,

 Defendant-Appellant.)
)
)
)
)
)
)
)
)
)
Appeal from the
Circuit Court of
Cook County

No. 92--CR--7286

Honorable
James Schreier,
Judge Presiding.

 JUSTICE CERDA delivered the opinion of the court:
 Following a jury trial, defendant, Stanley Davis, was
convicted of two counts each of armed robbery (720 ILCS 5/18-
2(a)(West 1992) and unlawful restraint (720 ILCS 5/10-3.1 (West
1992) in connection with the robbery of a jewelry store, and was
sentenced to 25 years' imprisonment. On appeal, defendant
asserts that (1) the trial court improperly admitted hearsay
testimony; (2) the trial court erred in allowing testimony that
he had a police record and used an alias; (3) the State's
eyewitness testimony was improperly bolstered; (4) cumulative
errors denied him a fair trial; and (5) he did not receive
effective assistance of counsel. For the following reasons, we
affirm.
 Enis Cirkic, who owned Ennes Jewelers at 2356 W. Devon
Street in Chicago, testified that at 5:50 p.m. on December 2,
1991, he was working with his wife, Enisa, his son, Elvis, and an
employee named Idhan Tahirovic. Entering the store from the
street, there were glass jewelry showcases on the left side,
right side, and at the back wall. Defendant came into the store
and went to the back showcase, which contained diamond rings. He
was wearing a short fur jacket, expensive-looking boots,
expensive jewelry, a watch, and a brown cap. He asked Enisa
several questions about the jewelry before Enis started talking
with him. Two or three minutes later, while defendant was
looking at a diamond ring, Idhan let another man into the store.
 Defendant's partner walked between the left and right
showcases before drawing a gun, using it to motion to Idhan and
Elvis. As he told them, "move" or "let's go," defendant stepped
back, put a yellow leather bag on the floor, and put his fur
jacket on a chair behind the back showcase. He then told Enis,
"Be quiet and move from the showcase." Defendant jumped over the
showcase by putting both his hands on the showcase, then took
handcuffs and silver duct tape from the leather bag. He threw
the handcuffs to the gunman, who put them on Enisa and Idhan. 
After the gunman told the victims to get on their knees, he 
instructed Elvis to handcuff himself to Enis.
 Defendant started to take the jewelry from a showcase while
the gunman searched the victims and took $80 from Enis. When a
bus stopped in front of the store, defendant instructed the
gunman to take the victims to the back room, where they sat on
the floor. Defendant stayed in the front of the store. 
 The gunman closed the door to the back room and instructed
Elvis to tape his legs. While he was checking to see if Elvis
had complied, Enis jumped him and grabbed his hands. They
struggled for the gun, which went off. All the victims jumped at
the gunman and got him to the ground. He had been shot and died
as a result of the wound. 
 Enis slowly went to the front of the store to see if
defendant was still there. When the victims realized that
defendant was gone, Elvis ran across the street to call the
police. Three days later, Enis viewed a lineup from which he
could not identify anyone. However, on March 12, 1992, he
identified defendant from another lineup. 
 The testimony of Enisa, Elvis, and Idhan was substantially
the same as Enis's testimony. All three victims identified
defendant at the March 12, 1992, lineup and in court. 
 Officer Stanley Mocodlo, a latent fingerprint examiner for
the Chicago Police Department, identified the three palmprints
found at the robbery scene as defendant's. 
 Chicago police detective William Baldree, who investigated
the robbery, testified that he received information about the
robbery from four informants. Based on that information, he went
through the Secretary of State's computer system with the partial
license plate number of "XUF" and the name Stanley, which led him
to defendant, who owned a car similar to the one police were
seeking. Baldree got defendant's picture because he had a police
record and showed it to Enisa and Idhan along with four other
photographs. Based on their identification of defendant from the
photo array, Baldree obtained an arrest warrant for defendant. 
 The State presented testimony from the victims of two
similar jewelry store robberies, which had occurred in October
and November 1991. One of the eyewitnesses testified that
defendant and another robber left the scene in a small silver
Chevy. The eyewitness from the third robbery testified that
defendant left in a large car with two other people. 
 After the State rested its case-in-chief, Janice Woodfork
testified that she was with defendant until 1 p.m. on December 2,
1991, when he left to go shopping. He returned at 3:20 p.m., and
at 6 p.m., Woodfork, defendant, and defendant's mother went to a
laundromat where they stayed until 10 p.m. 
 Defendant's mother, Lolita Davis, testified that she went to
the laundromat with Woodfork and defendant on December 2, 1991,
sometime after 5 p.m. and stayed until 10 p.m. She also
testified that defendant had never owned a small silver car and
that she did not know the license plate number of his brown Chevy
Caprice.
 Defendant testified that he was with Woodfork on December 2,
1991, until he left to go shopping at 12:35 p.m. At 2:15 p.m.,
he entered Ennes Jewelers to buy a ring for his uncle. He stayed
eight minutes, then returned home. Later, he went to the
laundromat with his mother and Woodfork. 
 Defendant raises several trial errors to which he did not
object or include in his post-trial motion. Although they
generally would be waived (People v. Williams, 165 Ill. 2d 51,
60, 649 N.E.2d 397 (1995); People v. Enoch, 122 Ill. 2d 176, 186,
522 N.E.2d 1124 (1988)), defendant contends that the alleged
errors amounted to plain error and, alternatively, that his
attorney's failure to preserve the issues denied him his right to
the effective assistance of counsel. Since defendant claims that
his attorney's failure to object to the testimony denied him the
effective assistance of counsel, we will review the alleged trial
errors. People v. Barrow, 133 Ill. 2d 226, 274, 549 N.E.2d 240
(1989); People v. Gonzalez, 238 Ill. App. 3d 303, 314, 606 N.E.2d
304 (1992). 
 Defendant asserts that he was prejudiced by Detective
Baldree's testimony regarding his investigation. Specifically,
defendant complains of Baldree's testimony that informants gave
him the name "Stanley" and part of defendant's license plate
number, "XUF," when they were interviewed in connection with this
crime. Defendant argues that the State enhanced the prejudicial
effect of these alleged errors by drawing attention to them
during its cross-examination of defendant's mother and its
closing argument. 

 A police officer may reconstruct the steps taken in a crime
investigation and may describe the events leading up to the
defendant's arrest if that testimony is necessary and important
to explain the State's case to the jury (People v. Simms, 143
Ill. 2d 154, 174, 572 N.E.2d 947 (1991)), but the officer's
testimony must be limited to the fact that he spoke to a witness
without disclosing the contents of that conversation (People v.
Henderson, 142 Ill. 2d 258, 303, 568 N.E.2d 1234 (1990)). There
is a distinction between an officer testifying to the fact that
he spoke to a witness without disclosing the contents of that
conversation and an officer testifying to the contents of the
conversation, which is inadmissible hearsay. People v. Gacho,
122 Ill. 2d 221, 248, 522 N.E.2d 1146 (1988); People v. Trotter,
254 Ill. App. 3d 514, 527, 626 N.E.2d 1104 (1993). Furthermore,
if testimony of the conversation's contents is presented, the
trial court must instruct the jury that it was introduced for the
limited purpose of explaining what caused the police to act and
that the jury is not to accept the statement as true. Simms, 143
Ill. 2d at 174; Trotter, 254 Ill. App. 3d at 527. 
 Based on those principles, we find that the State's conduct
was improper. It was improper and unnecessary to tell the jury
that several informants told the police that someone named
Stanley was involved in this robbery, that his license plate
included "XUF," and that a computer check led the police to
defendant. Furthermore, it was error to use the automobile
testimony from the victims of the other robberies to link those
cars with this robbery because there was no evidence that any car
was used here. Moreover, none of the eyewitnesses in the other
robberies saw even a partial license plate number and they gave
conflicting testimony about the description of the car in which
the robbers fled. The State further compounded its error in its
closing statement, when it remarked that defendant's mother's
testimony about defendant's car tied him to the informant's
information. 
 Defendant further argues that he was prejudiced by Baldree's
testimony that he obtained defendant's photograph because he had
a Chicago police record and that defendant's automobile was
registered under an alias. Defendant maintains that the evidence
was irrelevant and served only to inform the jury of his prior
criminal activity. The State responds that the evidence was
proper because it chronicled the police investigation and
provided a basis for defendant's identification.
 Testimony that a defendant had previously been arrested
should not be admitted into evidence (People v. Lampkin, 98 Ill.
2d 418, 430, 457 N.E.2d 50 (1983)) and a defendant's alias can be
admitted into evidence only if the evidence is relevant to some
fact at issue in the case (People v. Brown, 146 Ill. App. 3d 101,
105, 496 N.E.2d 1020 (1986)). Since defendant's prior police
record and use of an alias were irrelevant to any issue in the
trial, Baldree's testimony was improper. 
 Next, defendant asserts that the State improperly bolstered
the eyewitness identifications of defendant by introducing
inadmissible evidence that, prior to viewing the lineup from
which they identified defendant, they viewed another lineup
during which they identified no one. The State concedes that the
testimony was inadmissible.
 Although there were several trial errors, those errors were
harmless in that they did not prejudice defendant. Reversal is
not required where the record affirmatively shows that the error
was not prejudicial. People v. Richardson, 123 Ill. 2d 322, 342,
528 N.E.2d 612 (1988). This is a very unusual case because all
the eyewitnesses positively identified defendant as one of the
robbers. Two of those eyewitnesses talked extensively with
defendant before he robbed them. In addition, three of
defendant's partial palmprints were found on the glass showcase. 
The record shows that those palmprints could not have been on the
showcase for more than an hour. There was also evidence of
defendant's similar modus operandi in other nearby jewelry store
armed robberies. 
 In making our decision, we have reviewed any effect the
improperly admitted evidence may have had on the other evidence
introduced at trial and the conduct of the defense. Fahy v.
Connecticut, 375 U.S. 85, 87, 11 L. Ed. 2d 171, 173-74, 84 S. Ct.
229, 230-31 (1963). Due to the overwhelming evidence of
defendant's guilt, we conclude that retrial without the erroneous
admission of the trial errors would produce no different result. 
People v. Arman, 131 Ill. 2d 115, 124, 545 N.E.2d 658 (1989);
People v. Lash, 252 Ill. App. 3d 239, 624 N.E.2d 1129 (1993). 
 Defendant also contends that the State improperly bolstered
its other crimes evidence with an inadmissible hearsay
identification from a different armed robbery. Defendant
complains that George Layous, who testified that defendant robbed
him at gunpoint in his jewelry store in November 1991, stated
that one of his employees, Tony Nahhas, had been present during
the robbery, but he was not in court because he was working. 
Detective James Gildea then testified that Nahhas had identified
defendant in a March 1992 lineup. 
 Hearsay identification is reversible error only when it
serves as a substitute for courtroom identification or when it is
used to strengthen or corroborate a weak identification. People
v. Colon, 162 Ill. 2d 23, 34, 642 N.E.2d 118 (1994); People v.
Johnson, 202 Ill. App. 3d 417, 426, 559 N.E.2d 1041 (1990). If it
is merely cumulative or supported by a positive identification
and by other corroborative circumstances, it constitutes harmless
error. Colon, 162 Ill. 2d at 34; Johnson, 202 Ill. App. 3d at
426. Since Nahhas's out-of-court identification of defendant was
merely cumulative and was supported by positive in-court
identifications by the victims in this crime, the error is
harmless.
 Defendant's next claim of error is that he was prejudiced
because the mugshot sent to the jury room during deliberations
included information of his arrest for a prior crime. The date
of November 10, 1986, was on a placard around his neck, and on
the back, the following was listed:
 "Davis, Stanley 
 7/1/1972
 AKA: Coleman"
 When identification is a material issue at trial, testimony
related to the use of mugshots in an investigation may be
introduced to show how a defendant was initially linked to the
commission of an offense. Arman, 131 Ill. 2d at 123; People v.
Taylor, 244 Ill. App. 3d 806, 815-16, 612 N.E.2d 943 (1993). 
Such evidence, however, is "not without limits," and if it tends
to inform the jury that the defendant committed an unrelated,
criminal act, those photos should not be admitted in evidence or
shown to the jury. Arman, 131 Ill. 2d at 123; People v. Dunigan,
263 Ill. App. 3d 83, 635 N.E.2d 522 (1994); Taylor, 244 Ill. App.
3d at 816. 
 Although we agree with defendant that the mugshot should
have been altered to remove any information of his prior arrest,
the trial court did not abuse its discretion. The decision as to
which evidence should be taken into the jury room is within the
trial court's discretion and will not be disturbed absent an
abuse of that discretion. People v. Shum, 117 Ill. 2d 317, 353,
512 N.E.2d 1183 (1987).
 We also find that the failure of defendant's attorney to
object to the trial errors was not ineffective assistance of
counsel because it did not prejudice defendant. A reviewing
court does not have to decide if the attorney's performance was
deficient before it examines any prejudice suffered by the
defendant as a result of the alleged deficiency. Strickland v.
Washington, 466 U.S. 668, 697, 80 L. Ed. 2d 674, 699, 104 S. Ct.
2052, 2069 (1984). To show prejudice, the defendant must
demonstrate that there was a reasonable probability that, but for
the attorney's errors, the result of the proceeding would have
been different. Strickland, 466 U.S. at 694, 80 L. Ed. 2d at
698, 104 S. Ct. at 2068. Defendant failed to make such a
showing.
 For those reasons, we affirm the circuit court's judgment.
 Affirmed.
 Tully, P.J., and Gallagher, J., concur.